WILLIAMS *et al.*, *Appellants*, v. THE CHICAGO, SANTA FE & CALIFORNIA RAILWAY COMPANY *et al.*

Division Two, November 29, 1892.

1. **Practice**: REVIEW OF ERRORS: MOTION FOR NEW TRIAL. The action of the court in sustaining a motion striking out a part of the petition will not be reviewed, unless assigned as error in the motion for a new trial.

2. **Railroad**: CONSTRUCTION CONTRACT: MEASUREMENTS OF ENGINEER. A stipulation in a construction contract with a railroad company, providing that it shall be executed under the direction of the company's engineer by whose admeasurement the amount of work performed shall be determined, and whose determination shall be conclusive, is valid and binding, since it is a part of the consideration of the contract.

3. ———: ———: ENGINEER A STOCKHOLDER. The fact that the engineer was a stockholder in the company does not render the stipulation invalid, for under the contract the engineer is not a judge between the parties, acting indifferently, but a person who represents the company, and will look after its interests.

4. **Contract**: RAILROAD LIEN: ENGINEER'S ESTIMATE: PLEADING. The approval of the engineer in an action on such contract must be averred and proved.

| | |
|---|---|
| 112 | 463 |
| 113 | 107 |
| 114 | 549 |
| 112 | 463 |
| 119 | 407 |
| 112 | 463 |
| 121 | 97 |
| 123 | 118 |
| 123 | 379 |
| 124 | 425 |
| 58a | 485 |
| 59a | 53 |
| 59a | 648 |
| 112 | 463 |
| 128 | 27 |
| 62a | 617 |
| 62a | 681 |
| 112 | 463 |
| 129 | 335 |
| 63a | 408 |
| 112 | 463 |
| 65a | 252 |
| 65a | 271 |
| 66a | 652 |
| 67a | 667 |
| 112 | 463 |
| 68a | 11 |
| 69a | 236 |
| 112 | 463 |
| 71a | 539 |
| 112 | 463 |
| 141 | 462 |
| 112 | 463 |
| 147 | 628 |
| 77a | 71 |
| 80a | 121 |
| 112 | 463 |
| d152 | 595 |
| 112 | 463 |
| 153 | 314 |
| 153 | 546 |
| 112 | 463 |
| 87a | 476 |
| 112 | 463 |
| 163 | 219 |
| 112 | 463 |
| 166 | 327 |

5. ——: ——: ——. Where, in an action by the contractor to enforce a lien against the railroad, a count in the petition tenders the issue whether the engineer had made an estimate and certificate of the work, the plaintiff, before introducing evidence of the amount and value of the work, must first show that the engineer, after demand upon him, refused to make the estimate and certificate as required by the contract.

6. ——: ——: QUANTUM MERUIT. But, under a *quantum meruit* count for the value of work and materials furnished, the fact that the engineer has made the estimate and certificate is a matter of defense.

7. ——: ——: ——. Plaintiff had the right under either count of the petition to show the amount of his work and labor, and was not precluded from so doing merely because the defendant pleaded the estimate and certificate of the engineer.

8. ——: ——: ——. So plaintiff could show under either count of the petition that the engineer misconstrued the contract in his classification of the work, and had not measured the work according to the contract; and an allegation of fraud was not necessary to entitle him to introduce such evidence.

9. ——: ——: ——. The engineer's measurement, in the absence of fraud or such gross mistake as to imply bad faith, is binding and conclusive; so his classification of material, where it is left by the contract to his judgment, is conclusive, in the absence of fraud.

10. ——: ——: ——: QUANTUM MERUIT. A recovery on the *quantum meruit* count cannot be for more than the contract price, since the contract must control as to the price and all other matters fixed by it.

11. ——: ——: ——: PLEADING. The averments that the engineer fraudulently failed to make the required measurements are not sufficient to enable plaintiff to impeach the measurements, on the ground that they were made in a fraudulent manner, and in disregard of the contract.

12. ——: ——: ——: PLEADING FRAUD. The facts constituting the fraud in the measurements should be set out in order to impeach them.

13. ——: ——: IMPEACHING ENGINEER'S AWARD. The award of the engineer is impeachable for fraud, gross error or mistake, both at law and in equity.

14. ——: ——: EVIDENCE. Upon the *quantum meruit* count plaintiff is not obliged to call the engineer as a witness as a condition precedent to making out his case.

15. **Railroads:** CONTRACTOR'S LIEN: AMENDED LIEN. A railroad contractor is entitled, under Revised Statutes, 1879 (secs. 3200–3216), to one valid lien for work done and material furnished, and if the first is defective he may file another within ninety days from the time the work is finished.

16. ————: ————: SUBSEQUENT PURCHASERS. Such lien is valid not only against the company with which the contract was made, but also against another company taking the property with notice of the obligation.

17. ————: ————: NOVATION. Nor, in case of sale by the company with which the contract was made to another company, will the fact, that the contractor accepted money due him on his contract from the second company release the first one from its liability on its contract.

*Appeal from Macon Circuit Court.*—HON. ANDREW ELLISON, Judge.

REVERSED AND REMANDED.

*Boyle, Adams & McKeighan* with *Berry & Thompson* for appellants.

(1) The court erred in striking out a portion of the first count of the petition on the ground that the determination of the respondents' engineers could not be impeached except in a court of equity. (2) The court erred in excluding plaintiffs' evidence offered to show that no measurement or calculations were made by the respondents' engineers, and that the work had been made by appellants' engineers, and was correctly stated in the petition. 2 Wood on Railway Law, 995–997; *Stark v. DeGraff*, 22 Minn. 431; *Herrick v. Railroad*, 27 Vt. 673; Morse on Arbitration & Award, 177, 211, 212, 491; *Snell v. Brown*, [71 Ill. 133; *Railroad v. Polly*, 14 Gratt. 447; *Railroad v. Lafferty*, 14 Gratt. 478; *Wycoff v. Meyers*, 44 N. Y. 143; *Thomas v. Fleury*, 26 N. Y. 26; *Bank v. Mayor*, 63 N. Y. 336; *Chism v. Shippen*, 16 Atl. Rep. (N. J.) 316; *Lynn v. Railroad*, 60 Md. 404; *Wilson v. Railroad*, 11 Gill & J.

58; *Batchelor v. Kirkbride*, 26 Fed. Rep. 899; *Debois v. Canal Co.*, 12 Wend. 334; *Railroad v. Northcott*, 15 Ill. 49; *Kistler v. Railroad*, 88 Ind. 463; *McAvoy v. Long*, 13 Ill. 148. (3) It was error to hold that the engineers could only testify as to whether measurements were made or not. There is no rank between witnesses as to matters of seeing and hearing. *Canfield v. Ins. Co.*, 35 Wis. 421; *Vautrain v. Railroad*, 78 Mo. 44. (4) The engineers had no power to change the terms of the contract, and to refuse to class as loose rock and solid rock that which the contract expressly declared should be loose and solid rock. *Mansfield v. Railroad*, 17 Ohio, 396; 2 Sutherland on Damages, 520; 2 Wood on Railway Law, 995; *Starkey v. DeGraff*, 22 Minn. 431; *Railroad v. Wilcox*, 48 Pa. St. 161; *Debois v. Railroad*, 12 Wend. 354; *Bridge Co. v. McGrath*, 134 U. S. 260. (5) The appellants offered to show that no notice, or opportunity was ever given them to appear before the engineers in the making of their final estimates and be heard; the appellants should have been given notice of the determination and afforded a hearing. *McMahon v. Railroad*, 20 N. Y. 463; *Collins v. Vanderbilt*, 8 Bosw. (N. Y.) 313; *Wilson v. York*, 11 G. & J. 58; *Gay v. Lathrop*, 6 N. Y. St. Rep. 603; 2 Wood on Railroads, 999. (6) The engineer under the contract must make his final estimates within a reasonable time. 1 Rorer on Railways, 463; *Smith v. Railroad*, 36 N. H. 458; *Milner v. Railroad*, 4 Ga. 385; *Bowery v. New York*, 63 N. Y. 336. (7) The court erred in refusing to allow appellants to show that no final certificate was furnished within a reasonable time. *Fowler v. Diekman*, 84 Ill. 130; *Thomas v. Fleury*, 26 N. Y. 26. (8) The appellants under any possible view were entitled to prove on the second or *quantum meruit* count the work they had done and its reasonable value. *Canfield*

*v. Ins. Co.*, 55 Wis. 421; *Fowler v. Diekman*, 84 Ill. 130; *Yeats v. Ballentine*, 56 Mo. 530; *Mansur v. Botts*, 80 Mo. 651; *Neenan v. Donoghue*, 50 Mo. 493; *Dinsmore v. Livingston Co.*, 60 Mo. 241; *Eyerman v. Cemetery Ass'n*, 61 Mo. 489; *Rude v. Mitchell*, 97 Mo. 365.

*Gardiner Lathrop* and *Ben Eli Guthrie* for respondents.

(1) The action of the court below in striking out a part of plaintiffs' petition on motion of defendants cannot be reviewed by this court, because no complaint of such action was made by the plaintiffs in their motion for a new trial. *Acock v. Acock*, 57 Mo. 154; *Turner v. Johnson*, 95 Mo. 467; *Savings Inst. v. Jacoby*, 97 Mo. 617; *Orr v. Rode*, 101 Mo. 387; *Lyon v. LaMaster*, 103 Mo. 612; *Crow v. Stevens*, 44 Mo. App. 137. (2) For the same reason this court cannot consider the alleged error charged to have been committed by the court below in overruling plaintiffs' motion to strike out certain portions of defendants' answer. (3) The action of the court below, however, in striking out part of plaintiffs' petition, even if subject to review, must be held to have been clearly right. (4) The manifest object of the plaintiffs, which they did not attempt to disguise, was thereby to secure the verdict of a jury in an action at law, in place of the estimates of the engineers by which they had agreed to be bound. This they could not do without first having the estimates of the engineers set aside by a proper proceeding in equity. Story on Equity Jurisprudence [12 Ed.] secs. 1452, 1457; 1 Redfield on Railways [6 Ed.] p. 433; 1 Rorer on Railroads, p. 462; 2 Wood's Railway Law, sec. 277, p. 995; *Sharpe v. Railroad*, L. R. 8 Ch. App. 592; *Ranger v. Railroad*, 5 H. L. Cases, 71; *Sherron v. Wood*, 5 Halst. 7; *Fletcher v. Hubbard*, 43 N. H. 58; *Herrick v. Belknap's Estate*, 27 Vt. 673; *Crumlish v. Railroad*, 5 Del. Ch.

270; *Wood v. Railroad*, 39 Fed. Rep. 52. (5) The fact that the chief engineer was also a stockholder, director and once president of the railway company did not disqualify him from acting under the contract. *Nav. Co. v. Fenlon*, 4 W. & S. (Pa.) 205; *Ranger v. Co.*, 5 H. L. Cases, 71, 89, 115; *Fowler v. Jackson*, 12 S. E. Rep. (Ga.) 811; *Pearson v. Barringer*, 13 S. E. Rep. (N. C.) 942. (6) Even if the engineer's estimate can be assailed at law the evidence fails to show any bad faith on his part or failure to exercise an honest judgment. His final estimate has the force and effect of the award of an arbitrator. *Condon v. Railroad*, 14 Gratt. 302; *Kidwell v. Railroad*, 11 Gratt. 676; *Snell v. Brown*, 71 Ill. 133; *Sweet v. Morrison*, 116 N. Y. 19; *Scott v. Avery*, 5 H. L. Cases, 811; *Scott v. Corp. Liverpool*, 1 Giff. 216; *Kihlberg v. United States*, 97 U. S. 398; *Railroad v. March*, 114 U. S. 549; *Railroad v. Price*, 138 U. S. 185. (7) The burden of plaintiff's offers of evidence was to show that the estimates which had been actually made by the railway's engineers were made upon basis of computation. This was clearly incompetent under the issue of no estimates which plaintiff had specially tendered. *Ellison v. Weatherby*, 78 Mo. 115; *Taylor v. Scott*, 26 Mo. App. 249; *Claycomb v. Butler*, 36 Ill. 100. (8) The offer to prove by other witnesses than the company's engineers themselves that no final estimate of plaintiff's work had been made by them was properly rejected. 1 Greenleaf on Evidence, sec. 82; *Washington Co. v. Railroad*, 58 Mo. 372; *Williams v. East India Co.*, 3 East T. R. 192; *Roberts v. Tennell*, 3 T. B. Mon. 247; *Yost v. Mensch*, 141 Pa. St. 73. (9) The judgment of the engineer as to classification of solid and loose rock will not be reviewed. *Newman v. Labeaume*, 9 Mo. 30; *Reily v. Bennett*, 34 Mo. 524; *Mitchell v. Curran*, 1 Mo. App. 453; *Burchell v. Marsh*, 17 How.

(U. S.) 344; *Nav. Co. v. Fenlon*, 4 W. & S. (Pa.) 205; *Clark v. Watson*, 18 C. B. (N. S.) 278; *Railroad v. Nixon*, 1 H. L. Cases, 111; *Palmer v. Clark*, 106 Mass. 373; *Fudicker v. Ins. Co.*, 62 N. Y. 292. (10) Plaintiffs cannot rightly complain of want of notice or opportunity to be heard by the engineers before the final estimate was made. The contract provides for nothing of the kind, and the evidence shows that appellants submitted their claims for classification to the engineer in writing and requested no other or further opportunity to be heard. Again, the evidence shows appellants filed their lien and brought suit without waiting for the engineer to complete his estimates. (11) It is only where a special contract has not been complied with, and where the defendant has received something of value by reason of the work and labor, etc., that plaintiff is entitled to recover on a *quantum meruit.* 2 Chitty on Contracts [11 Am. Ed.] p. 826; 2 Parsons on Contracts, pp. 522–3; *O'Brien v. Mayer*, 23 Mo. App. 648; *Downey v. Burke*, 23 Mo. 228; *Lowe v. Sinklear*, 27 Mo. 308; *Yeats v. Ballentine*, 56 Mo. 530; *Flynn v. Railroad*, 63 Iowa, 490; *Jones v. Vestry*, 19 Fed. Rep. 59, 64; *Ranger v. Railroad*, 5 H. L. Cases, 71. (12) The appellants. could not abandon their first lien and file another, and particularly not without releasing the first one. *Mulloy v. Lawrence*, 31 Mo. 583; *Battle v. McArthur*, U. S. Cir. Ct. E. D. Mo., THAYER, J.; *Rude v. Mitchell*, 97 Mo. 365; *Allen v. Frumet Co.*, 73 Mo. 688. (13) The trial court did not err in directing a verdict for the Iowa company. All its rights and property passed to the Illinois company, and there was a complete novation. Story on Contracts, secs. 471, 474; *Hart's case*, L. R. 1 Ch. Div. 307; *St. Louis v. Clemens*, 42 Mo. 69; 9 Cush. 263.

GANTT, P. J.—In the year 1887 the Chicago, Santa Fe & California Railway Company of Iowa, a corporation of the state of Iowa, began the construction of a line of railroad from Kansas City, Missouri, through Missouri and Iowa to the Mississippi river, and the Chicago, Santa Fe & California Railway Company, an Illinois corporation, began the construction of a railroad from the Mississippi river to Chicago in continuation of the other line. A. A. Robinson was second vice-president and chief engineer of the Illinois company. B. F. Booker was chief engineer of the Iowa company.

On the twelfth of January, 1887, the plaintiffs in this action entered into a written contract with the Iowa corporation to do the following work:

"The grubbing, clearing and grading, including the furnishing of materials as specified in said contract, to complete the roadbed and prepare the same ready for receiving the superstructure upon that portion of said railroad described in said contract as sections 75 to 94, inclusive, in division 3, which said sections of said road commenced about three miles west of Grand river, in the county of Carroll, and terminated at the easterly end of said section 114, in the county of Macon, running through parts of Carroll, Chariton, Linn and Macon counties, in the state of Missouri."

Said contract contained, among others, the following provisions:

"The work shall be executed under the direction and supervision of the chief engineer of said railway company and his assistants, by whose measurements and calculations the quantities and amounts of the several kinds of work performed under this contract shall be determined, and whose determination shall be conclusive upon the parties; and who shall have full power to reject or condemn all work or materials which

in his or their opinion do not fully conform to the spirit
of this agreement; and said chief engineer shall decide
every question which can or may arise between the
parties, relative to the execution thereof, and his decis-
ion shall be binding and final upon both parties.    And,
whereas  the classification of excavation provided for in
the annexed specifications is of a character that makes
it necessary that special attention should be called to it,
it is expressly agreed by the parties to this contract
that the determination by the measurements and calcu-
lations of the said engineer of the respective quantities
of such excavation shall be final and conclusive.

"The aforesaid party of the second part hereby
agrees that whenever this contract shall be completely
performed on the part of the said party of the first part,
and the engineer has certified the same in writing, the
said party of the second part shall, within ten days
thereafter, pay to said party of the first part any remain-
ing sums due for said work according to this contract.

"It is further agreed between the parties that
monthly payments shall be made by the party of the
second part, on the certificate of the engineer for work
done, deducting ten per cent. from the value of work
done, as agreed compensation for damages, to be
forever retained by the party of the second part, in case
the whole amount of work herein named shall not be
done in accordance with this agreement.

"For the purpose of avoiding all causes of differ-
ence or dispute between the parties to this contract,
relative to its true intent or meaning, and for the pur-
pose of adjusting in an amicable manner any difference
that may or can arise relative thereto, it is hereby
mutually understood and agreed by the parties as
follows, to-wit:

"*First.* No extra charges will be claimed or
allowed on account of changes either in the line or

grade of the road, the prices herein mentioned being considered as full compensation for the various kinds of work herein agreed to be performed.

"*Second.* Whenever work is required to be done which is not now contemplated or covered by the prices herein mentioned, the engineer shall fix such prices for the work as he shall consider just and equitable, and the said parties shall abide by such prices; provided, the party of the first part enter upon and commence such work with full knowledge of the price so fixed by the engineer; but, if the party of the first part decline executing said work at the price fixed by the engineer, then the party of the second part may enter into contract with any person or persons for its execution, the same as if this contract had never existed; and if extra work, or work not provided for in this contract, is performed by the contractors without protest or notice in writing to the engineer, and to the party of the second part, before prices shall have been fixed to such work, then the engineer shall estimate the same at such prices as he shall deem just and reasonable, and his decision shall be final, and the party of the first part shall accept of such prices in full satisfaction of all demands against the party of the second part for said extra work. But nothing shall be deemed extra work that can be measured or estimated under the provisions of this contract."

The specifications attached to said contract, and made a part thereof, contained, among others, the following provisions: "Loose rock shall comprise: *First*, shale of soap-stone lying in its original or stratified position, coarse boulders in gravel, cemented gravel, hard-pan, or any other material requiring the use of pick or bar, or which cannot be plowed with a strong ten-inch grading plow well handled, behind a good six-mule or horse team; *second*, detached rock or

boulders in masses exceeding one and one-half cubic feet and less than one cubic yard.

"Solid rock shall comprise: *First*, rock in solid beds or masses in its original or stratified position; *second*, boulders or detached masses of rock exceeding one cubic yard, and all other material which in the judgment of the engineer cannot be removed without being blasted.

"*Second*. Measurement will be made by the cubic yard of twenty-seven (27) cubic feet from true measured prisms indicated by the cross-section notes or slope stakes of the engineer.

"When measurement is made in embankment, an allowance for shrinkage will be used in making estimates as follows: Ten per cent. on casting or shovel work, five per cent. on scraper work, and seven per cent. on wagon work. These percentages may be deducted from the true measured prisms, or the embankments may be required to be raised that much higher, at the discretion of the engineer."

The contract is set out in full in the petition.

The plaintiffs entered upon the work of performing said contract on or about the seventh day of February, 1887, and completed the same on or about the nineteenth day of January, 1888.

On or about the fifteenth day of July, 1887, the said railway company of Iowa, executed and delivered to the said defendant, the Chicago, Santa Fe & California Railway Company, a conveyance of all its road, its railway property, corporate rights and franchises, including said roadbed being constructed by appellants, and the said grantee company assumed and agreed to pay all the debts, and carry out and execute all the contracts, of the said grantor company. And the said grantee company took possession of the road, and the contract after that time was carried on under

the direction and superintendence of the engineers of said company.

On the thirteenth day of March, 1888, plaintiffs filed a railway contractor's lien against the railroad in Missouri, in the office of the circuit clerk of Macon county, alleging that the work was completed December 19, 1888, and claiming a balance due of $118,870. A copy of this lien was also filed in the office of the secretary of state within five days thereafter and a copy served on defendant. On the nineteenth of March, plaintiffs began their action to enforce their lien.

The final estimate of the chief engineer of the defendant, of all the work on this contract except section 79, was dated March 26, 1888; was received in the company's office in Chicago by the auditor April 12, 1888, and by the treasurer April 14, 1888. It showed a balance due of $29,427.89. The final estimate on section 79 was dated April 14, 1888; was received by the auditor July 26, 1888, and by the treasurer August 22, 1888, and showed a balance of $971.17. The amount of work by this final estimate on section 79 was the same as had been shown by the monthly estimate in February, 1888.

On the sixteenth of April, 1888, the plaintiffs filed a second lien in the circuit clerk's office in Macon county, stating that the work was completed January 19, 1888, and claiming a balance of $188,311.75. A copy of this lien was also filed in the office of the secretary of state and served on defendant. On the seventeenth of June, 1888, this action was commenced to enforce this second lien.

The original petition set out the contract with the Iowa company; pleaded full performance of all its terms and conditions; stated the items of the various kinds of work claimed to have been done by them, showing a balance alleged to be due, after allowing

all credits, of $188,311.74; averred the sale of the railway property, corporate rights and franchises of the Iowa company, including the roadbed being constructed by plaintiffs, to the Illinois company on the fifteenth of July, 1887; that said named company assumed and agreed to pay all the debts, and carry out and execute all the contracts of the Iowa company, including the contract with plaintiffs, and that said work under said contract after said date was directed and overseen by the Illinois company, its officers and engineer, in all respects as though said company had executed said contract in the first instance; set out the filing of the second lien on the sixteenth day of April, 1888, and made this further specific allegation:

"Said plaintiffs state that said contract provides and provided for measurements by the chief engineer of said railway company of the work and labor done and materials furnished under said . contract as a basis of payments to the said plaintiffs for the same, which, as these plaintiffs aver, contemplated and meant actual calculations and measurements by said engineer to be made in good faith and by the exercise of an honest judgment and by competent engineer and assistants; yet, as these plaintiffs aver, said engineers of said railway companies, or the assistants and deputies of either of said companies, did not make of the greater part of said work any actual calculations and measurements of the said work and labor to determine classification of same done under contract, but only approximate or percentage calculations and measurements as to classifications of work, and these calculations, measurements and estimates which the said engineers of said railway companies did from time to time make, during and after the completion of said work, were made by said engineers and their assistants fraudulently and in bad faith. towards these plaintiffs,

and were made by said chief engineer by wilful, fraudulent and wrongful and erroneous construction of said contract; and in making said calculations and measurements said engineers and their assistants failed to exercise honest judgments, but on the contrary did make their said calculations and measurements fraudulently, with the intent and purpose of defrauding the plaintiffs out of their just rights, to the end that their employers, said railway companies, might wrongfully and fraudulently be benefited to the injury of the plaintiffs by the said wrongful and fraudulent misconduct, the said chief engineers unknown to plaintiffs being at the time, as these plaintiffs aver, stockholders, directors and vice-presidents of said Chicago, Santa Fe & California railway, and said railway company of Iowa, which was fraudulently concealed from plaintiffs by said railway companies and engineers when contract was made.

"Said plaintiffs state that the said pretended and fraudulent calculations and measurements of said engineers and their assistants of said railway companies, made during the progress of said work, and after its completion, in amount and value, were as follows:

282,413.2 cubic yards earth embankment borrowed, at 16 cents per cubic yard.................................................$ 61,136.11
152,160.6 cubic yards earth embankment borrowed, at 17 cents per cubic yard........................................... 25,867.30
34,208.4 cubic yards earth excavation wasted, at 16 cents per cubic yard........................................... 5,489.34
147,580.4 cubic yards excavation wasted, at 17 cents per cubic yard........................................... 25,088.67
649,070.1 cubic yards earth excavation hauled, at 17 cents per cubic yard........................................... 110,341.91
13,081 cubic yards loose rock, at 55 cents per cubic yard...... 7,194.55
277,969.7 cubic yards loose rock, at 50 cents per cubic yard... 138,984.85
5,034 cubic yards solid rock, at $1.05 per cubic yard.......... 5,286.33
21,260 cubic yards solid rock at $1.00 per cubic yard.......... 21,260.00
6,617,041.9 cubic yards hauled 100 feet, at $.012 per cubic yard 79,474.50
238.6 acres of clearing, at $30 per acre...................... 7,158.00
87.57 acres of grubbing, at $130 per acre................... 11,385.40
Extra work with 15 per cent. added........................... 9,120.37
Old rails furnished.......................................... 4,980.09

Total debits as per said calculations and measurements...$512,747.42

"The said railway companies have paid to plaintiffs, as heretofore stated, $490,894.93, leaving only a balance according to the said fraudulent calculations, measurements and estimates due to the plaintiffs of $21,853.49.

"Plaintiffs state that said engineers of either of said railway companies have not, although the said work and labor under said contract was complete on, to-wit, the nineteenth day of January, A. D. 1888, and, although the said engineers have often been so requested by said plaintiffs, and although a reasonable time has long since elapsed, certified to plaintiffs in writing the completion of said work and labor and the furnishing of materials by plaintiffs under said contract.

"Said plaintiffs state that they are ignorant whether or not said engineers of said railway companies or either of them have so certified, to said railway companies or one of them in writing, to the completion of said work and labor and materials furnished under said contract, but the belief of these plaintiffs is that they have not so certified, although a reasonable length of time has long since elapsed, but, if such certificate has been made, it has been fraudulently concealed from these plaintiffs by said engineers and said railway companies.

"Said plaintiffs state that said acts and conduct of said engineers of said railway companies were fraudulently contrived and intended by said engineers and said railway companies conspiring together for the purpose of fraudulently and wrongfully preventing plaintiffs from obtaining, receiving and collecting their said just demands against said railway companies, and from enforcing their said lien under the laws of Missouri."

The petition next averred the mortgage on the rail-

road property and prayed judgment against the Iowa company and the Illinois company for $188,311.75 with interest thereon, and for the enforcement of a lien against the railway property.

The petition contained a second count claiming the same amount to be due them upon *quantum meruit*.

On the sixteenth day of September, 1889, plaintiffs, by leave of court, amended their petition by striking out the following allegations of the petition:

"Plaintiffs state that said engineers of either of said railway companies have not, although the said work and labor under said contract was completed, on, to-wit, the nineteenth day of January, A. D. 1888, and although the said engineers have often been so requested by said plaintiffs, and although a reasonable time has long since elapsed, certified to plaintiffs in writing the completion of said work and labor, and the furnishing of materials by plaintiffs under said contract. Said plaintiffs state that they are ignorant whether or not said engineers of said railway companies or either of them have so certified to said railway companies or one of them in writing to the completion of said work and labor and materials furnished under said contract, but the belief of this plaintiff is that they have not so certified, although a reasonable length of time has long since elapsed, but if such certificate has been made it has been fraudulently concealed from these plaintiffs by said engineers and said railway companies,"—and inserting in lieu thereof the following:

"Plaintiffs state that said engineers of either of said railway companies have not certified, although often requested so to do in writing, the completion of said work and labor and furnishing of materials set out herein, although at the date of the commencement of

this suit a reasonable time had elapsed therefor after the completion thereof.

"On the contrary said engineers refused to so certify said work, labor and materials, which said failure and refusal of said engineers, these plaintiffs aver, were and are in bad faith, fraudulent and collusive with said defendant railway companies."

On the same day, upon motion of defendants, the plaintiffs excepting thereto, the court struck out of plaintiffs' petition the following matter:

"Yet, as these plaintiffs aver, said engineers of said railway companies, or the assistants and deputies of either of said companies, did not make of the greater part of said work any actual calculations and measurements of the said work and labor, to determine classification of same done under said contract, but only approximate or percentage calculations and measurements as to classifications of work, and these calculations, measurements and estimates, which the said engineers of said railway companies did from time to time make during and after the completion of said work, were made by said engineers and their assistants fraudulently and in bad faith towards these plaintiffs, and were made by said chief engineer by wilful, fraudulent and erroneous construction of said contract; and in making said calculations and measurements said engineers and their assistants failed to exercise honest judgments, but on the contrary did make their said calculations and measurements fraudulently, with the intent and purpose of defrauding the plaintiffs out of their just rights, to the end that their employers, said railway companies, might wrongfully and fraudulently be benefited to the injury of plaintiffs by said wrongful and fraudulent misconduct, the said chief engineers, unknown to plaintiffs, being at the time, as these plaintiffs aver, stockholders, directors and vice-pres-

idents of said Chicago, Santa Fe & California railway and said railway company of Iowa, which was fraudulently concealed from plaintiffs by said railway companies and engineers when contract was made.''

Thereupon the plaintiffs, by leave of court, made a second amendment to their petition, by striking out the following portions thereof: All of the paragraph beginning: ''Said plaintiffs state that the said pretended fraudulent calculations and measurements of said engineers and their assistants of said railway company, made during the progress of said work and after its completion, in amount and value were as follows,''—itemizing the debits as above set forth and closing with the averment that the same amounted to $512,747.42, and the railway company had paid thereon $490,894.93, leaving only a balance according to said fraudulent calculations, measurements and estimates due to plaintiffs of $21,853.49. And in lieu thereof made this allegation: ''Said plaintiffs further allege that, although a reasonable length of time has long since elapsed, said chief engineer or his assistants did not during the progress of said work or since its completion make, as provided for in said contract, any measurements and calculations to determine the amounts and quantities of the several kinds of work performed under said contract. On the contrary, as these plaintiffs aver, said chief engineer and his assistants of both of said railway companies, although often requested so to do by these plaintiffs, refused during the progress of said work and ever since its completion to make the said measurements and calculations, as provided and stipulated in said contract, which said refusal, neglect and failure of said chief engineers and their said assistants were in bad faith and fraudulent and fraudulently collusive with said railway company.

"Said plaintiffs further state that said chief engineer of either of said railway companies did not, as provided and stipulated in said contract, during the progress of said work or since its completion, make any determination, by measurements and calculations, of the respective quantities of the different classes of work in the excavations made by plaintiffs under said contract; on the contrary, as these plaintiffs aver, said chief engineer during the progress of said work refused, and since the completion of the same has refused, neglected, and failed to determine, by measurements and calculations, the respective quantities of said excavations, as provided for in said contract, although a reasonable time had elapsed before the commencement of this suit, which said refusal, failure and neglect of said chief engineer were fraudulent and in bad faith and in wilful violation of the terms and conditions of said contract, and were collusively contrived with said railway company."

On the seventeenth day of September, 1889, defendants filed their answer to plaintiffs' second amended petition. The material parts of the answer are as follows:

Paragraph 1 was a general denial of the petition except such as was expressly admitted.

Paragraph 2 admitted the execution and binding force of the contract set out in the petition and specifically pleaded the second paragraph of the contract, providing that the work should be done under the direction of the engineer, and that his decision should be final.

The answer then stated the provision of the contract for monthly payments to the plaintiffs, upon the certificate of the engineer, for work done, deducting ten per cent., and alleged "that the said engineer, during

the progress of said work, did from month to month make running estimates and calculations of the amount of work done each month and the value thereof according to the terms, conditions and prices of said contract and specifications, and did certify the same to the parties to said agreement, and the said defendant railway company paid the same to plaintiffs, which said payments plaintiffs then and there received and accepted under and in compliance with the terms of said contract.'' The answer then averred the making of a final estimate by the chief engineer of the railway company and his assistants of the work done by the plaintiffs, under their contract, upon the completion thereof, and within a reasonable time thereafter, in accordance with the terms and stipulations of said contract.

The eighth alleged the making of the monthly estimates, the prompt payment to plaintiffs on the same, the receipt of the moneys monthly, the advancement of large sums on the contract, and that plaintiffs knew how the estimates were made, and treated them as compliance with the contract, took the money thereon, and were estopped.

The ninth pleaded the stipulation in the contract, that upon a performance of the contract the engineer should certify the same in writing, and in ten days thereafter the defendant should pay plaintiffs the sums remaining due according to the contract; alleged a full compliance by the engineer, a readiness to pay, and prayed that plaintiffs should be enjoined from further maintaining this action.

Plaintiffs filed a reply, denying that estimates were made according to contract, and to the third, fourth, fifth, sixth and seventh defenses a general denial.

*Third.* Averred that, although a reasonable length of time after the completion of the work had elapsed before the bringing of this suit, the chief engineer

of either of said companies did not certify the same in writing, as provided in said contract, but on the contrary, although often requested by these plaintiffs so to do, failed and neglected so to do, and that said refusal, neglect and failure were in bad faith, and by fraudulent collusion with said railway company.

The fourth, fifth and sixth paragraphs of the reply were and are as follows:

"*Fourth.* Said plaintiffs admit that the contract set up in the first count of their amended petition herein contains the clause referred to. in the second defense of defendants' said answer, but plaintiffs aver that, although a reasonable length of time has elapsed, said chief engineer of either of said railway companies did not during the progress of said work or since its completion make, as provided for in said contract, any measurements and calculations to determine the amounts and quantities of the several kinds of work performed under said contract. On the contrary, as these plaintiffs aver, said chief engineer and his assistants of both of said railway companies, although often requested so to do by these plaintiffs, refused during the progress of said work, and ever since its completion, to make the said measurements and calculations, as provided and stipulated in said contract, which said refusal, neglect and failure of said chief engineers and their said assistants were in bad faith and fraudulently collusive with said railway companies.

"Said plaintiffs further state that said chief engineer of either of said railway companies did not, as provided and stipulated in said contract, during the progress of said work, or since its completion, make any determinations, by measurements and calculations, of the respective quantities of the different classes of work in the excavation made by the plaintiffs under said contract; on the contrary, as these plaintiffs aver,

said chief engineer, during the progress of said work and since the completion of the same, has refused, neglected and failed to determine, by measurements and calculations, the respective quantities of the different classes of work in said excavation, as provided for in said contract, although a reasonable length of time had elapsed before the commencement of this suit, which said refusal, failure and neglect of said chief engineer were fraudulent and in bad faith and in wilful violation of the terms and conditions of said contract, and were collusively contrived with said railway company.''

In the fifth paragraph of the reply, the plaintiffs allege that the estimates of the chief engineer and his assistants were all made in bad faith, and not in the exercise of honest judgments; were outside of and in violation of the powers conferred by the contract, and were fraudulently made by erroneous and arbitrary constructions of the contract and specifications with reference to the classification of material.

In the sixth and concluding paragraph of the reply, plaintiffs averred want of notice from the chief engineer, or his assistants, of their meeting and proceeding to make the final estimates of the quantities and amount of the several kinds of work performed under the contract, and want of opportunity to be present and be heard at any such meeting.

The cause was tried at the September term, 1889, and under the instructions of the court resulted in a verdict for plaintiffs for $28,584.69 against the Chicago & Santa Fe Railway Company alone, and for the other defendants, and the jury found against the lien.

In due time, plaintiffs filed their motion for a new trial, alleging the following grounds:

*First.* The court erred in rejecting testimony offered by the plaintiffs at the trial of the cause.

*Second.* The court erred in admission of testimony offered by defendants.

*Third.* The court erred in refusing to give instructions asked by plaintiffs.

*Fourth.* The court erred in giving instructions asked by defendants.

The court overruled this motion, and the plaintiffs appealed to this court.

I.  The first assignment of error is based on the action of the circuit court in sustaining the motion of defendants to strike out a part of plaintiffs' petition; and it is earnestly urged that we should review this action of the trial court, notwithstanding no complaint thereof was made by the plaintiffs in their motion for a new trial.

We think the law is clearly against the contention of plaintiffs.  It was their duty to give the trial court an opportunity to correct this error, if any, and, where this is not done, this court will not review the rulings of the lower court upon the point.  *Acock v. Acock,* 57 Mo. 154; *Curtis v. Curtis,* 54 Mo. 351; *Lyon v. LaMaster,* 103 Mo. 612; *State ex rel. v. Burckhardt,* 83 Mo. 430; *Bollinger v. Carrier,* 79 Mo. 318; *Exchange Bank v. Allen,* 68 Mo. 474; *State v. Gilmore,* 110 Mo. 1; *Railroad v. Carlisle,* 94 Mo. 166.  And this ruling disposes of the other assignment that the court erred in refusing to strike out certain portions of the answer. This also was not made a ground of the motion for a new trial.  We think there is a marked distinction between the cases of *O'Connor v. Koch,* 56 Mo. 253, and *Butler v. Lawson,* 72 Mo. 227, and similar cases, where the objection amounted to a demurrer to the whole case, and resulted in a dismissal of the cause, and cases like the one at bar, but it is unnecessary for us to discuss the rulings in those cases at this time.  Moreover, plaintiffs by pleading over waived their right to

review the action of the court on this point. *Ely v. Porter*, 58 Mo. 158; *Gale v. Foss*, 47 Mo. 276; *Scovill v. Glasner*, 79 Mo. 449.

II. The plaintiffs, to sustain the averments of the first count in their petition, offered to prove at the trial that no measurements or calculations, although the work was capable of actual measurements, were made by the respondents' engineers, and that the work had been measured by plaintiffs' engineers, and was correctly stated in the petition, and that the defendants' engineers declared that they had not and would not measure the work, regardless of the specifications, and that the engineers were prejudiced against the plaintiffs and had misconstrued the contract as to classification. The circuit court rejected all this evidence.

To determine the correctness of this ruling, we must recur to the contract itself, ascertain the rights of the parties thereunder, and then see if under the pleadings this evidence was admissible. Now, by the contract, it was stipulated that "the work shall be executed under the direction and supervision of the chief engineer of said railway and his assistants, by whose measurements and calculations the quantities and amounts of the several kinds of work performed under this contract shall be determined, and whose determination shall be conclusive upon the parties, and said chief engineer shall decide every question which can or may arise between the parties relative to the execution thereof, and his decision shall be binding and final upon both parties."

It should be further noted that plaintiffs complained that Mr. Robinson, the chief engineer, was an officer and stockholder of the defendant. It was also agreed that, when the contract was completed on the part of the plaintiffs, and the engineer had certified the same in writing, the railroad company should,

within ten days thereafter, pay to the plaintiffs the sums remaining unpaid according to the contract. This stipulation in the contract that the engineers' estimate and classification should be final is valid and binding, and has the sanction of the courts in England and the different states of the Union and the federal courts. *Ranger v. Railroad*, 5 House' of Lords, 88; *Herrick v. Railroad*, 27 Vt. 673; *Kidwell v. Railroad*, 11 Gratt. 676–691; *Grant, Alexander & Co. v. Railroad*, 51 Ga. 352; *Railroad v. Veeder & Co.*, 17 Ohio, 396; *Sweet v. Morrison*, 116 N. Y. 19; *Railroad v. March*, 114 U. S. 549.

By such a stipulation, the parties constitute the engineer an arbitrator, and the provision is held, if anything, more binding than an ordinary submission, for the reason that it enters into, and becomes a part of the consideration of, the contract, without which it would not in all probability have been made.

It has its origin in contracts for the building of important and extensive government works, and was designed to avoid harassing litigation over questions that can only be determined honestly by those possessed of scientific knowledge.

If parties are not allowed to make their own contracts, and stipulate to have their differences settled without a resort to litigation, many enterprises, of vast importance and incalculable benefit to the public, must remain untouched. *Construction Co. v. Stout*, 8 Col. 61; *Snell v. Brown*, 71 Ill. 133.

And it is equally well settled that the fact that the chief engineer was also a stockholder does not of itself render the submission to him invalid. The argument made by the plaintiffs, that the duties confided to the engineer are essentially judicial, and being a stockholder himself he is thus made a judge in his own case, was met in the case of *Ranger v. Railroad*, 5 House of

Lords Cases, 88, where it was said: "This branch of
the appellant's argument rests on the principle decided
in this house, in the case of *Dimes v. Proprietors
Canal*, 3 House of Lords Cases, 759, in which your
lordship agreed with the able opinion delivered by the
learned judges through Mr. Baron PARKE, that the
decision of a judge made in a cause in which he has an
interest is voidable, unless in cases of necessity, as
where an action was brought against all the judges of
the court of common pleas, on a matter on which they
had exclusive jurisdiction. But the question is whether
it governs the present case. I think the principle has
no application here; a judge ought to be, and is sup-
posed to be, indifferent between the parties. He has, or
is supposed to have, no bias inducing him to lean to the
one side rather than to the other.  *  *  * But here the
whole tenor of the contract shows it was never intended
that the engineer should be indifferent.  *  *  * When
it is stipulated that certain questions shall be decided
by the engineer appointed by the company, this is, in
fact, a stipulation that they shall be decided by the
company. It is obvious that there never was any
intention of leaving to third persons the decision of
questions arising during the progress of the work.
The company reserved the decision to itself, acting,
however, as from the nature of things it must act, by
an agent, and that agent was, for this purpose, the
engineer. His decisions were, in fact, those of the
company. The contract did not hold out, or pretend
to hold out, to the appellant, that he was to look to the
engineer in any other character than as the impersona-
tion of the company; in fact, the contract treats his acts
and the acts of the company, for many purposes, as
equivalent, or rather identical. I am, therefore, of
opinion that the principle on which the doctrine as to
a judge rests wholly fails in its application to this
case."

This decision has met the approval of the courts of this country. *Navigation Co. v. Fenlon*, 4 Watts & S. 205; *Faunce v. Burke*, 16 Pa. St. 469; *Railroad v. Polly*, 14 Gratt. 447; *Smith v. Railroad*, 36 N. H. 458.

We can see no substantial difference between submitting the measurements and estimates to a paid agent and engineer, who is not a stockholder, and one who is. In either case, it is in law submitting to the company's own estimate and measurement.

Holding then that it was competent for the parties to make a contract containing this stipulation, let us next inquire as to the ground laid in the petition for this proposed evidence. By the contract, the engineer was required to make the measurements and estimates, and the obligation of the company was to pay ten days after the final estimate had been made by him, and the first count in the petition is based on the contract. In *Dinsmore v. Livingston Co.*, 60 Mo. 241, this court held that "where parties agree to abide by the decision or opinion of an architect, engineer or commission of any kind, in regard to the correspondence of the work done with the contract, in an action on such contract the *approval of the person selected by both parties to determine this must be averred and proved*. If the disapproval or rejection of the work arises from caprice or malice, and is really without foundation, such facts may be alleged and a recovery still be had in equity. 2 Story on Equity, 1457a, 1457b; *Herrick v. Belknap*, 27 Vt. 673; *Neenan v. Donoghue*, 50 Mo. 495; *Yeats v. Ballentine*, 56 Mo. 531."

There is no allegation that the balance claimed in the first count was the amount due as found by the chief engineer. *Prima facie*, then, it is insufficient for want of this averment.

And, recognizing this cardinal rule in pleading, learned counsel, to avoid this objection, aver that

the engineer did not make the *measurements as required by the contract*, though often requested so to do, and *did not* at *its completion* make a determination of the respective quantities of the work, and his failure and neglect so to do was fraudulent, in bad faith and collusive with the defendant company. Of course, if the engineer made no measurement and estimate, plaintiffs would not be debarred of redress, and this count, in so far as it accounts for the pleader's failure to aver that the balance he claims is due by the estimate of the engineer, must be held good pleading. *Railroad v. March*, 114 U. S. 549; *Rude v. Mitchell*, 97 Mo. 365; *Dinsmore v. Livingston Co.*, 60 Mo. 241; *Neenan v. Donoghue*, 50 Mo. 495; *Yeats v. Ballentine*, 56 Mo. 531.

The answer denied this, and set forth at length what defendant claimed was the final estimate. In the fifth paragraph of their reply plaintiffs inferentially admit there was an estimate made by the chief engineer, but allege it was made in bad faith, was outside of and in violation of the contract, fraudulent and collusive, particularly as to earth, loose rock and solid rock.

When the cause came on for hearing, the circuit court ruled that, under this state of pleading, before plaintiffs could introduce evidence of the amount and value of the work done by them, they must first show that the engineer had refused to make an estimate and certificate as required by the contract, after demand upon him by the plaintiffs. This ruling is challenged, and the learned counsel for plaintiffs contend that they had a right to show that the engineers did not make a correct measurement, and did not properly classify the material, and wholly misconstrued the contract as to the classification of loose rock and hard-pan.

We think the circuit court correctly ruled that the pleadings on the first count tendered the issue of

*estimate or no estimate, certificate or no certificate,* and that this must first be determined.

The certificate of the balance due by the chief engineer was a prerequisite to the sustaining of an action on this contract, in the first instance, and before the estimates and measurements of other engineers are admissible, in an action seeking the benefits of this contract, the circuit court was right in ruling that it must first be shown that the chief engineer had not certified the amount due, as the parties had agreed he should, or had not made the calculation or measurements as required by the contract. Plaintiffs were not required to go into the enemy's camp, however, and prove this by the company's engineer. Any other competent witness who knew the facts could testify to this failure.

III.   Now while it is perfectly clear that, in a suit on the contract, this was necessary before they could go into the measurements made by engineers, not named in the contract, it is urged upon us that plaintiffs had a right, under their second count of *quantum meruit,* to recover the value of their work and materials.

At common law, a party could sue *in assumpsit* to recover the stipulated price due on special contract where the contract had been fully executed, and nothing remained to be done but the payment of the agreed price. *Mansur v. Botts,* 80 Mo. 651; *Chesapeake & O. Canal Co. v. Knapp,* 9 Peters, 565; *Dermott v. Jones,* 2 Wall. 9. In such a case he does not repudiate the contract, nor seek to avoid it, but, under his common count of *quantum meruit,* he offers the contract in evidence to sustain his case, and his proof of compliance with its terms. Nor does this necessarily work injustice, as might at first appear.

In this case, the plaintiffs have performed certain

work under a written contract.    That contract specifies the compensation they shall receive for the various kinds of work, but there is a stipulation that a certain engineer shall estimate the amount of this work, and give a certificate, and this shall fix the total price plaintiffs shall receive.

Now it is clear that if, through neglect or fault of the engineer or the party who employed him, this estimate was not made, or through caprice or fraud he refused to make it, no one will say plaintiffs shall not have their reward because of his default, and yet, looking at the letter of the contract alone, they would be remediless.    Accordingly, while it is true that, if a party makes a contract, he must abide by it before he can recover on it, and if an approval by an outside party is made a condition precedent in an action on the contract, such an approval must be alleged and proved, yet, where this is wrongfully or unavoidably withheld, the courts have never refused redress, and this is the firmly settled law in this state and in this court.    *Neenan v. Donoghue*, 50 Mo. 495.

When he proceeds to make his case, he offers the contract, the foundation of his claim, and then offers to show that the chosen umpire or arbitrator has failed to make his estimate.    If the engineer has failed, no one will doubt the propriety of permitting him to show by other legitimate evidence his compliance with his contract and the value of his labor.    This plaintiffs offered to do here, and were denied the right, because the defendants in their answer averred the engineer had made the estimate.    In this the circuit court erred. Plaintiffs had a right under either count in their petition to show the amount of their work and labor, and were not precluded from so doing merely because defendants had pleaded the estimate and certificate.    That was a matter of defense at this stage of the trial.    The

contract fixed the prices. Moreover, plaintiffs were entitled to show, if they could, under either count, that the engineer *misconstrued the contract* in his classifica-tion of the loose rock clause, and had not measured the work according to contract. An allegation of fraud was not necessary to entitle them to this evidence at, this time.

Plaintiffs claimed and offered to show that the engineer construed hard-pan to be loose rock, *only* "when it could not be plowed with a strong ten-inch plow behind a good six mule or horse team." Plain-tiffs insisted that, under this clause, the contract itself fixed the classification of hard-pan as loose rock without reference to the plowing test. We think the plaintiffs are correct in their interpretation of this clause, and, if the engineer did so misconstrue it, he exceeded the power vested in him by the contract, and there is no principle of law or equity that demands that plaintiffs should submit to a misconstruction of their contract, which would result in serious loss to them.

The contract fixed certain classifications of material; others it left to the judgment of the engineer. The engineer's measurement, in the absence of fraud, or such gross mistake as necessarily to imply bad faith, is binding and conclusive, and his classification of material, where it is left to his judgment, is final and conclusive, *in the absence of fraud*, but, under a proper construction of this contract, the parties had not sub-mitted to him the question of how hard-pan was to be classified. *They fixed that for themselves*. It is the province of the courts to construe contracts, and the plaintiffs had a right to the construction of the court on this clause. *Bridge Co. v. St. Louis*, 43 Fed. Rep. 768; *Lewis v. Railroad*, 49 Fed. Rep. 708.

That there will be great diversity of opinion as to what is hard-pan, we think is highly probable, but the

parties to this contract assumed it was well known. It was the province of the engineer to say what was hard-pan, and how much hard-pan there was excavated, but he was bound to classify hard-pan as loose rock, and had no right to decline to so grade it, because it could be moved with a ten-inch plow and six-mule team. Of course, if it shall appear on the trial that the engineer did not misconstrue the contract in this respect, then his measurements are binding and conclusive, *in this as well as in other respects, until impeached for fraud.*

Having held that plaintiffs under the allegations of their petition could show the amount and value of their labor not exceeding the contract price, the question necessarily arises, what effect is to be given the contract in such a case? We answer that the contract must still control. It fixes the prices and in certain cases the classification, and provides the engineer shall determine the others. While parties have been allowed to sue *in assumpsit* where there was a special contract, this court has invariably ruled that the contractor cannot recover beyond the contract price, less the damages, if any, occasioned by his failure to fully comply with his contract. If, upon trial, the defendants show to the satisfaction of the jury that an estimate was made as required by the contract, and certificate of the balance given by the engineer to plaintiffs, *within a reasonable time,* the court will instruct the jury that this is final and conclusive as to all matters submitted to him for his measurement, classification and calculation, in the absence of fraud or gross mistake, but as to materials not submitted to his classification it must appear that he has measured and estimated them according to the classification fixed by the parties in the contract.

So far we have discussed the admissibility of the evidence without reference to the charge of fraud. Fraud vitiates everything. While the courts with

great unanimity sustain stipulations providing that the work shall be done under the direction and supervision of the engineer, and his estimate shall be final and conclusive upon the parties to the contract, they have also concurred in saying that the engineer's estimate may be assailed for fraud, gross errors or mistake. *Railroad v. March*, 114 U. S. 549; *Sweet v. Morrison*, 116 N. Y. 19; *Brush v. Fisher*, 70 Mich. 469; *Perkins v. Giles*, 50 N. Y. 228.

In the original petition filed in this cause, there were general allegations of fraud to the effect that the chief engineer and his assistants made a fraudulent construction of the contract and made their calculations fraudulently. These allegations were stricken out on motion, and no complaint was made on this ground in the motion for new trial, and, as before said, cannot be reviewed on that account.

In the amended petition on which the cause was heard there is an allegation that the engineer, though often requested, did not measure the work, but fraudulently and in bad faith and in collusion with the company refused to do so, and did not make and return his estimates as required by the contract. It seems very plain that the charge of fraud here goes to the refusal to measure and make the estimate, not to the making of measurements and estimates in a fraudulent manner or outside of and in disregard of the contract, and it would seem clear that such an averment would only enable the plaintiffs to dispense with the averment and proof of the condition precedent, upon which they were authorized to sue, and was not such a charge of fraud in the manner of making and returning estimates as would permit evidence to impeach an estimate actually made, certified and returned, but erroneously estimated and calculated. The sufficiency of a charge of fraud under our code

system has been adjudicated by this court, and it has been held that "it is not enough to charge that a party has fraudulently procured, or fraudulently did this or that, or committed fraud." "These allegations are but conclusions of law; the facts constituting the fraud must be stated." Bliss on Code Pleading, 211; *Smith v. Sims*, 77 Mo. 269–274; *Reed v. Bott*, 100 Mo. 62; *Hoester v. Sammelmann*, 101 Mo. 619; *Mateer v. Railroad*, 105 Mo. 320.

Without any averment then that the measurement and calculations were made, and without the statement of any facts showing these measurements were in fact made and certified, but fraudulently made, the plaintiffs sought to show that the method adopted by the engineers in estimating the work was not correct. But they do not point out in their pleading wherein the engineers went outside of the contract, nor in what their bad faith consisted, nor wherein they failed to exercise honest judgments, nor what arbitrary construction they made of the contract or its specifications. As a basis for correcting the errors made in the measurements and estimates of this work by the engineers, if any were made, this petition does not charge fraud or gross error in such a way as to inform the court or the opposite party of the nature of the fraudulent acts, and on this ground the court committed no error in declining to hear the evidence as on an issue of fraud or mistake. Plaintiff sought to cure this defect by the reply. There are several reasons why the reply does not justify evidence of fraud, though it tendered the issue of no measurement or certificate within a reasonable time, and a misconstruction of the contract in the classification of materials.

It is sufficient to say that it contains no statement of facts constituting fraud. It is clear that a reply of fraud in general terms was sufficient at common law,

and indeed was held sufficient in the petition or other pleading in the early cases after the adoption of the code, but since the decisions in *Smith v. Sims*, 77 Mo. 269, and *Reed v. Bott* and *Hoester v. Sammelman, supra,* it would seem that something more is required, and the facts should be stated. These later decisions we think are more in harmony with our code system, and in conflict with the earlier adjudications. Bliss on Code Pleading, sec. 339, note 1.

It is urged, with great ability and upon the most respectable authority elsewhere, that the award made by the engineer has the validity of awards by other arbitrators, and can only be impeached in a court of equity. Counsel also rely upon the expression in the opinion of Judge NAPTON in *Dinsmore v. Livingston Co.*, 60 Mo. 241, that "if the disapproval or rejection of the work arises from caprice or malice, and is really without foundation, such facts may be alleged, and a recovery be had in equity." That relief might be had in a court of equity upon appropriate charges of fraud and gross mistake we have no doubt, but to hold that the jurisdiction is exclusive would be to deny the courts of law a jurisdiction long exercised and firmly rooted.

In *Railroad v. March*, 114 U. S. 549, the suit was an action at law to recover a balance due on a contract for work and labor done on a railroad, containing a stipulation identical in principle with the one in the contract in this cause. It was not even suggested that the action had not been brought in the proper forum, or that a court of law was inadequate to give relief. There, as here, the declaration contained two counts. To the first count, relying specially upon the contract, a demurrer was sustained in the supreme court of the United States, because there was no averment that the engineer had been guilty of fraud or gross mistake in his estimates, and holding that in the absence of

such an allegation plaintiff could not go behind the certificate of the engineer, but clearly holding that with such averments the plaintiff might proceed in a court of law. But, even in that case, there was no question raised as to the common count of *indebitatus assumpsit*. See also *Railroad v. Price*, 138 U. S. 185. Here the action is on the contract in the first count, alleging a breach of its stipulations by defendants, and in the second count upon a *quantum meruit*.

In *Yeats v. Ballentine*, 56 Mo. 537, this court held that an action at law could be maintained notwithstanding the plaintiff himself had violated his contract. The doctrine of that case has been repeatedly approved, and we do not feel at liberty to question it at this day. *Rude v. Mitchell*, 97 Mo. 365.

Upon the issues tendered the plaintiffs could not be required to call the engineer as a condition precedent to establishing their case before the jury. It was said in *Rude v. Mitchell*: "On such an issue the estimate of the architect would be of no more value than that of any other competent witness." And to the same effect is *Yeats v. Ballentine, supra*.

IV. At the conclusion of the cause, the court gave peremptory instructions to the jury by which they were required to find against the plaintiffs' right to a lien for the balance of $28,584.69 admitted to be due them. The court evidently gave this instruction because it considered that plaintiffs had exhausted their right to a lien when they filed their first account on March 13, 1888, and this action having been brought on the lien filed April 16, 1889, plaintiffs had no right to enforce it. This involves a construction of our statutes giving a lien to contractors, materialmen and laborers on railroads. Revised Statutes, 1879, ch. 47, art. 4. This is a purely statutory lien. To entitle any contractor to this lien, he is required within ninety

days after the completion of the work to file in the office of the circuit clerk of any county through which the railroad is located a just and true account of the amount due, after all just credits have been given, which account shall state the amount claimed as due, the general nature of the work, amount of labor performed or of materials furnished; the dates when the work was done and materials furnished; the place or places at which said labor was done or materials furnished; the name or names of the parties with whom the contract for the work and material was made, and the name of the railroad against which the lien is to apply.

Action must be brought on this lien in ninety days, or it ceases. Revised Statutes, 1879, sec. 3205. This lien becomes an incumbrance from the date of the commencement of such work and labor, and is prior to all other mortgages and incumbrances.

The question now arises, if a contractor or other person, in attempting to avail himself of this provision of the law, fails to file such a statement of his claim as will give him this lien, may he within the time specified in the statute file a correct and sufficient statement, and thus entitle himself to the benefit of the statute, or is he cut off by his first futile attempt?

In *Mulloy v. Lawrence*, 31 Mo. 583, this court held the plaintiff could have but one lien, but in *Davis v. Schuler*, 38 Mo. 24, it was explained that this meant one good and valid lien, and, when the first paper filed was inoperative as a lien, the claimant might file another within the time prescribed. This last ruling is most certainly in accord with the spirit of the statute and common sense.

The question then arises in this case, was the lien of March 13, 1888, valid? If so, the plaintiffs have exhausted their right, and the court correctly decided

against them. The original lien filed March 13th could not be found, and the notice and the record were read as the next best evidence. The "account was for balance due for construction of a part of the railroad of said Ray county from February 7 to December 19, 1887, under a contract dated at Topeka, January 12, 1887, with the Chicago, Santa Fe & California Railway Company of Iowa, in construction of roadbed through sections 75 to 94, division 2, and sections 95 to 114, division 3, running through parts of Chariton, Linn and Macon counties, consisting of grading, scraping, cleaning, plowing, excavating of roadbed and ditching, piping and other work on said sections and section 115:

Amount of labor performed.................................$604,784.84
Amount paid on said work.................................. 485,914.84
Lien claimed on roadbed of said C., S. F. & C. Ry. Co. for
    salary................................................ 118,870.11

It is evident this would not support an action for a lien. As said in *Rude v. Mitchell*, 97 Mo. 365: "When the statute calls for a just and true account, it means a fairly itemized account showing what the materials are, the work that was done and the price charged, so that it can be seen from the face of the account that the law gives a lien therefor. * * * A lumping item of the whole contract price on the one hand and the credits on the other is no compliance with the law at all."

And this brings us to an examination of the second lien, of April 16, 1888. This lien specifies the different kinds of work, the quantities, cubic yards of earth, embankments borrowed, and price; the total amount of cubic yards of earth excavation with the price and amount; the amount of loose rock, price and amount; the amount of cleaning, grubbing, ditching and hauling, separately, placing of iron culverts, and different items of extra work, giving in detail credits

and the balance due. Under this account and the evidence tending to show that the last work was done on the nineteenth of January, 1888, we think the trial court erred in holding that the second lien was void, and in giving a peremptory instruction to that effect, .and refusing plaintiffs' instructions numbers 3 and 4, and refusing their instruction number 11.

The position taken in the brief of respondents, that the lien was lost because the Iowa company sold out to the Illinois company and assumed the obligation of paying plaintiffs for their work under the contract, and plaintiffs did not, within ninety days after that sale, file their lien, is not tenable. The plaintiffs had a contract to do this work; the company had a right to assign the contract and its assignee could assume to pay plaintiffs, but by so doing they could not destroy plaintiffs' rights.

The case is wholly unlike *Allen & Co. v. Mining Co.*, 73 Mo. 688, and *O'Connor v. Railroad*, 111 Mo. 185. In those cases there were different parties doing the work under different contracts, and it was held each must file his own lien; here all the work was done by one firm, under one contract, and there was no release of the original company, notwithstanding the Illinois company assumed the payment for the work. The contract will support the lien as against the Iowa company and all who take the property with notice of the obligation. We think this is too plain for argument.

It also follows that the circuit court erred in its first instruction, that under the evidence the jury must find for all the defendants except the Illinois company.

The conveyance by the Iowa company to the Illinois company did not release the former from its personal obligations to plaintiffs on the contract. The mere acceptance of the money, due them on their work

from the grantee of the company, did not work a release of the Iowa company. There is no evidence beyond the notice of the money due on their contract that they had agreed to release the Iowa company and accept the Illinois company in their stead. They prayed judgment against all, and were entitled to a personal judgment against the Iowa company and a lien as against all the others, if the court had granted their declarations of law and the jury under those instructions had found for them.

The judgment is reversed, and the cause remanded for a new trial in accordance with the views herein expressed. If plaintiffs desire to tender the issue of fraud, they should have leave to amend their petition and state the facts constituting the fraud or gross error of which they complain in their briefs in this court. All concur.