El Pueblo de Puerto Rico, demandante, apelante y apelado, v. Rafael Berríos, J. L. Berríos Delgado y F. Mariano Colón Berríos, demandados, apelados y apelantes.

Núm. 7532.—*Sometido:* Mayo 19, 1938. *Resuelto:* Marzo 21, 1939.

*Hon. Procurador General B. Fernández García y M. Rodríguez Ramos, Procurador General Auxiliar, abogados del apelante; González Fagundo & González, Jr., abogados de los apelados.*

El Juez Presidente Señor Del Toro emitió la opinión del tribunal.

Se ejercita en este caso una acción de daños y perjuicios. La presentación que del mismo hicieron los abogados de ambas partes en el acto de la vista fué breve, clara y sustancialmente completa.

Dijo el abogado del demandante:

"En este caso El Pueblo de Puerto Rico por conducto del Comisionado del Interior hizo un contrato con el Sr. Rafael Berríos, para construir una escuela de cuatro salones, de hormigón, en el barrio Guardarraya de Patillas. Esa escuela fué construída y entregada al Gobierno, y utilizada por éste, como escuela, allá por el año 1926, y al ocurrir el ciclón de San Felipe, . . . septiembre de 1928, la escuela se destruyó, y se ha entablado esta demanda de daños y perjuicios, basándose en que las causas inmediatas de la destrucción de la escuela fueron los vicios, los defectos de construcción de que adolecía el edificio aunque el temporal fué una causa que contribuyó. Con

motivo de esa destrucción El Pueblo de Puerto Rico incurrió en daños que no han podido ser recobrados de la parte demandada, del constructor, y que ese contrato para la fabricación de la escuela lo firmaron también como fiadores los otros dos codemandados.''

Y dijo el abogado de los demandados:

''Nuestra contención es efectivamente Sr. Juez que se celebró un contrato entre El Pueblo de Puerto Rico y Rafael Berríos, siendo fiadores de ese contrato don José L. Berríos y don F. M. Colón. Que esa obra se ejecutó bajo la inspección inmediata del Comisionado del Interior, que durante todo el tiempo tuvo un inspector vigilando la construcción de la obra, que los materiales se usaron de conformidad con el inspector y por ende con el Comisionado del Interior, de acuerdo con el contrato, que la construcción se hizo de acuerdo con los términos de ese contrato. Que se hizo la aceptación definitiva y que de conformidad con el contrato, y perdone S. S. que yo le repita tanto eso, quedó el demandado exento de toda responsabilidad, y los fiadores también toda vez que su fianza se canceló por el Comisionado del Interior. Que si el edificio se cayó fué por un acto de fuerza mayor, un ciclón de una intensidad desconocida, en esta isla, que un edificio, aun admitiendo a los efectos de la argumentación, que estuviera construído de acuerdo con las especificaciones, no podía resistir . . . Además los fiadores nunca, en ningún caso, podrían ser responsables de más cantidad de aquélla por la cual se obligaron en el documento de fianza que le presentaremos como prueba.''

Practicóse entonces la evidencia de una y otra parte y el pleito fué fallado finalmente por la corte de distrito declarando la demanda sin lugar. Apeló el demandante. Presentaron los demandados una moción pidiendo a la corte que enmendara su sentencia a los efectos de condenar al demandante en costas y honorarios de abogado. La corte declaró sin lugar la moción y los demandados apelaron también de la sentencia en tanto en cuanto no condena en costas y honorarios de abogado al demandante.

Para fundar su sentencia el juez de distrito emitió una opinión. De ella transcribiremos lo que sigue:

''Celebrada en su oportunidad la vista del caso y estudiada con posterioridad minuciosamente toda la evidencia practicada, que incluye la declaración de varios peritos técnicos del Departamento del

Interior de Puerto Rico, se resuelve que las alegaciones de hecho formuladas por el demandante han sido debidamente probadas. Otra, sin embargo, es la conclusión en lo que respecta a las cuestiones de derecho envueltas en el litigio.

"Para la construcción del edificio en cuestión se siguió el trámite de ley, efectuándose una pública licitación para la adjudicación de la obra al postor más aceptable a los representantes legales del demandante. Cubiertos todos los trámites de la licitación, la construcción de la obra fué adjudicada al contratista que en tal carácter ha sido demandado en este caso, quien, antes de comenzar la construcción firmó, conjuntamente con los Sres. Superintendente de Obras Públicas, Comisionado de Instrucción y Comisionado del Interior, de Puerto Rico, un contrato a los efectos de la referida construcción. Simultáneamente con ese contrato se formalizó una fianza a favor de El Pueblo de Puerto Rico, por la suma de $1,630, conteniendo dicha fianza la siguiente estipulación esencial:

" 'Por tanto, si dicho Rafael Berríos ejecutare y cumpliere exactamente todos los convenios y las condiciones del referido contrato, y desempeñare todas las obligaciones estipuladas por él y ejecutare todos los trabajos y suministrare todos los materiales requeridos, con cualquiera o todos los cambios, adiciones u omisiones que en dicho contrato y en adelante puedan introducirse dentro del plazo especificado para la terminación, o dentro de cualquier prórroga concedida para dicha terminación del contrato, prescindiéndose' en todo caso de dar aviso de la prórroga a los fiadores, y hubiere satisfecho con prontitud todo pago de operarios y materiales relacionados con la ejecución de dicho contrato; en este caso la presente obligación quedará cancelada; de lo contrario permanecerá en toda su fuerza y vigor.'

"El contrato a que se ha hecho referencia contiene una cláusula que dice, literalmente transcrita, así:

" '6.—Que las Condiciones Generales para la Contratación de Obras Públicas Insulares puestas en vigor desde el mes de julio de 1902, son aplicables a este contrato y forman parte del mismo.'

"Esas Condiciones Generales para la Contratación de Obras Públicas, que no sólo tienen fuerza de ley sino que además forman parte de la ley del contrato antes referido, contienen también una cláusula que, transcrita literalmente, dice así:

" 'If the work is found completed in accordance with specifications and so certified to by the engineer appointed for the purpose, the final acceptance of the work will be declared by the Bureau of Public Works, and when the final liquidation shall have been approved by the Commissioner of the Interior the percentages retained shall be

paid to the contractor and his bonds cancelled; *his responsibility under the contract having come to an end. Provided, however, that* the contractor shall give account of work done or material furnished, or for damages to landowners during the progress of the work before said percentages can be paid and bonds cancelled.' (Bastardillas nuestras.)

"A dicha cláusula se refiere expresamente el pliego oficial de 'Instrucciones, Proposición y Contrato para Obras Públicas Insulares', en la siguiente forma:

" 'Aceptación final.—La aceptación final se llevará a cabo al expirar el plazo de garantía. Se verificará una inspección de todas las obras por el Inspector que designare el Comisionado del Interior, y si éstas se encontraren en buen estado y de conformidad con todas las condiciones, estipulaciones y especificaciones del contrato, el Comisionado del Interior declarará la aceptación final de la obra y el contrato se cancelará de acuerdo con lo provisto en la sección 41 de las Condiciones Generales para la Contratación de Obras Públicas Insulares. En caso que el inspector designado por el Comisionado del Interior, no encontrara las obras en buen estado y *de conformidad con todas las condiciones, estipulaciones y especificaciones del contrato,* el Comisionado del Interior notificará por escrito al contratista o a su representante, las alteraciones y variaciones que hayan de efectuarse, haciéndose una nueva inspección después de ejecutadas dichas alteraciones o variaciones antes de procederse a la aceptación final.'

"En armonía con lo prescrito por las cláusulas contractuales que vinculaban a ambas partes en esta acción, relacionadas con la aceptación provisional y definitiva de la obra envuelta en este litigio, con fecha 30 de abril de 1926, se dirigió, por el Sr. Arquitecto Auxiliar del Departamento del Interior de Puerto Rico, una carta al contratista demandado en este caso, redactada en los siguientes términos:

" 'Me permito informarle que con fecha marzo 12, 1926, han sido aceptadas provisionalmente, las obras de construcción de una escuela de hormigón de 4 salones en el Bo. "Guardarraya", de Patillas, contratadas por usted.

" 'Adjunto le remito para su informe y gobierno, copia de la certificación Núm. 5, ascendente a $1,198.03, correspondiente al 90 por ciento del contrato.

" 'Llamo su atención hacia el hecho de que el contrato no podrá liquidarse finalmente sin el envío de sellos de Rentas Internas por valor de $1.79, por concepto de la Ley de Arbitrios y las fotografías.'

"Desde marzo 12 hasta julio 15, transcurrieron los cuatro meses estipulados en el contrato para realizarse la aceptación definitiva de

la obra, a partir desde la fecha de su aceptación provisional. Y en julio 29 del referido año el Comisionado del Interior de Puerto Rico notificó al contratista demandado la aceptación definitiva de la obra, procediendo al pago de la cantidad de dinero que todavía se le adeudaba sobre la misma, mediante una carta que, literalmente transcrita, dice así:

"'Señor: Me permito informarle que con fecha julio 15, 1926, ha sido aceptada finalmente la escuela de hormigón de 4 salones en el Bo. "Guardarraya" de Patillas, contratada por usted.

"'Con la presente le remito para su archivo y gobierno, copia de la certificación Núm. 6, ascendente a $832.85, por concepto de 10 por ciento retenido en dicho contrato, así como de la liquidación correspondiente.'

"Y en agosto 6 del mismo año, el Comisionado del Interior de Puerto Rico dirigió las dos cartas que se copian a continuación, a cada uno de los fiadores del contratista demandado,—y demandados a su vez—en este caso:

"'6–015–1215. Agosto 6, 1926.—Señor: Me permito informarle que con fecha julio 15, 1926, ha sido .aceptada finalmente la escuela de hormigón de 4 salones del Bo. "Guardarraya" de Patillas, contratada por el Sr. Rafael Berríos.

"'Por lo tanto, queda Ud. relevado de toda responsabilidad en relación con dicho contrato. Atentamente, COMISIONADO.—Sr. F. Mariano Colón Berríos, Yabucoa.

"'6–015–1214. Señor: Deseo comunicarle que con fecha julio 15, 1926, ha sido aceptada definitivamente la escuela de hormigón de 4 salones del Bo. "Guardarraya" de Patillas, contratada por el Sr. Rafael Berríos.

"'Por lo tanto, queda Ud. relevado de toda responsabilidad en relación con dicho contrato. Atentamente, COMISIONADO.—Sr. José L. Berríos Delgado, Yabucoa.'

"En estas condiciones el contrato entre ambas partes quedó definitivamente terminado y cesó toda relación legal entre las mismas.

"Es cierto que el artículo 1494 del Código Civil vigente, edición 1911, preceptúa que:

"'El contratista de un edificio que se arruinase por vicios de la construcción, responde de los daños y perjuicios si la ruina tuviere lugar dentro de diez años contados desde que concluyó la obra; igual responsabilidad y por el mismo tiempo, tendrá el arquitecto que la dirigiere, si se debe la ruina a vicio del suelo o de la dirección.

"'Si la causa fuere la falta del contratista a las condiciones del contrato, la acción de indemnización durará quince años.'

"El Código Civil, sin embargo, es de naturaleza supletoria y deja siempre en libertad a las partes contratantes para establecer en sus relaciones jurídicas contractuales, todos aquellos pactos, cláusulas y condiciones que tengan por conveniente, con la única limitación de que los mismos, desde luego no sean contrarios a las leyes, a la moral y al orden público.

"No hay duda alguna de que un plazo prescriptivo puede renunciarse, así como de que también puede serlo cualquier derecho de acción. En este caso, de una manera expresa y categórica, las partes pactaron que, después de verificarse una inspección de la obra, si ésta se encontrase en buen estado y de conformidad con todas las condiciones, estipulaciones y especificaciones del contrato, el Comisionado del Interior declararía la aceptación final de la misma y el contrato se cancelaría, de acuerdo con lo provisto en la Sección 41 de las Condiciones Generales para la Contratación de Obras Públicas, la cual terminantemente, prescribe que, realizada dicha aceptación final por el Negociado de Obras Públicas, se pagará al contratista la suma que a la fecha se le adeudase y finalizará toda su responsabilidad con motivo del contrato, siendo de rigurosa presunción que todos los requisitos previos se cumplieron, indudablemente, antes de dicho pago y de la aceptación final de la obra objeto de este caso.

"Ante tan categórica estipulación, no es posible llegar a otra conclusión, sino a la de que en el momento de dicha aceptación final, terminaron definitivamente las relaciones de las partes y cesó toda responsabilidad del contratista y de sus fiadores para con el demandante con motivo de dicho contrato.

"El Comisionado del Interior de Puerto Rico y sus subalternos que intervinieron en este caso, no eran personas desconocedoras de la técnica envuelta en toda clase de edificaciones. Eran competentes profesionales; la obra estaba sujeta a supervisión por ellos, y hubo continuamente en la misma, de acuerdo con los términos del contrato, un Inspector representándole, para vigilar el fiel cumplimiento de las obligaciones contractuales asumidas por el contratista demandado.

"A pesar de esto, sin embargo, otra hubiera podido ser tal vez la conclusión del tribunal, en virtud de sus conclusiones de hecho, a no existir, como parte del contrato, la referida Sección 41 del Pliego de Condiciones Generales para la Contratación de Obras Públicas en Puerto Rico.

"En estas condiciones se hace innecesario proceder a resolver las demás cuestiones planteadas en la acción, entendiendo la Corte que se debe, por consiguiente, declarar sin lugar la demanda . . ."

Tras un estudio de la transcripción y de los alegatos estamos convencidos de que el juez de distrito apreció bien la evidencia y aplicó correctamente la ley.

Hemos examinado la jurisprudencia y sostiene ampliamente el criterio del juez sentenciador. Bastará que citemos el caso de *City Street Imp. Co.* v. *Marysville,* 155 Cal. 419. En él la Corte Suprema de California se expresó así:

"Se sostiene de buena fe que la ciudad está impedida de negar la terminación del trabajo por razón de no haberse opuesto a ello según progresaba dicho trabajo, y porque el ingeniero firmaba los certificados de mes a mes, y a la supuesta conclusión del trabajo, evidenciando su aprobación del mismo. Los contratos de la naturaleza que aquí se consideran, no son nuevos para la ley. La estipulación en esos contratos al efecto de que el criterio del ingeniero será definitivo, ha sido declarada válida y obligatoria por las cortes de Inglaterra, por las de los diferentes estados de la Unión, y por las cortes federales. La Corte Superior de Missouri dice lo siguiente de tales estipulaciones: 'Por tal estipulación, las partes constituyen al ingeniero en árbitro, y se ha resuelto que tal disposición es, si acaso, más obligatoria que una sumisión ordinaria, por razón de que se introduce y entra a formar parte de la causa del contrato, sin la cual no se habría, en toda probabilidad, ejecutado.

" 'Tiene su origen en contratos para la edificación de importantes y extensas construcciones para el gobierno, y se instituyó para evitar pleitos interminables sobre cuestiones que sinceramente sólo pueden determinarse por aquéllos que poseen conocimientos científicos.' (*Williams* v. *Chicago etc. Ry.,* 112 Mo. 487, [34 Am. St. Rep. 403, 20 S. W. 631].)

"   *       *       *       *       *       *       *   "

". . . Los defectos ahora alegados en relación con el trabajo, a saber, que se permitía al agua permanecer en zanjas por tanto tiempo que afectaba el cemento antes de fraguar, y el no haber los trabajadores cimentado la mitad inferior de muchas de las uniones, asumiendo que ocurrieran, debieron haber sido observados por el ingeniero, a través de sus representantes, al tiempo que se efectuaba el trabajo y cuando podían haber sido fácilmente remediados. Ninguna porción del trabajo podía propiamente cubrirse con tierra en tanto no hubiera sido inspeccionada y declarada en buen estado, y no se pretende establecer que alguna fué cubierta antes de tal inspección, según el deseo u orden de los inspectores. Al permitir que

se cubriera, existía una aprobación práctica y una aceptación del trabajo por el ingeniero, a través de sus representantes, y esta aceptación se confirmaba de mes a mes por sus propios certificados para la asamblea (*common council*) de la ciudad, donde se expresaba la cantidad de trabajo efectuado por el demandante hasta el día primero del mes y la cantidad que se adeudaba por el mismo. Estos certificados necesariamente implicaban que el trabajo certificado se efectuaba de acuerdo con las especificaciones y estaba aprobado por él. El certificado final demostraba todo el trabajo por hacerse, necesariamente bajo la aprobación y satisfacción del ingeniero, y este certificado estaba reforzado por la declaración oral del ingeniero al mismo efecto, ante el concejo en la junta en que se recibía, excepto que apareció de tal manifestación oral que algunas uniones de tubería y una boca de alcantarillado (*manhole*) que se certificaron como terminadas, no se habían terminado a petición de la ciudad a los efectos de que se defiriese por unos cuantos días. Bajo estas circunstancias, creemos que la ciudad está claramente impedida de levantar que el demandante no ha cumplido con su contrato.

"No faltan autoridades sobre el particular. Debe tenerse en mente que hablamos de un caso en que no hubo fraude por parte del contratista, dirigido a impedir el descubrimiento de cualquier defecto, pues no había la más mínima base en la prueba para una conclusión a ese efecto. Lo más que podría decirse es que había evidencia tendente a probar falta de cuidado por parte de algunos empleados del demandante en cumplir en todo momento, al efectuar el trabajo, con las especificaciones, y una falta de cuidado tal que debió haberse observado y remediado antes de que el trabajo estuviera totalmente terminado. En el caso de *Schliess* v. *City of Grand Rapids,* 131 Mich. 52, dijo la Corte Suprema de Michigan: 'La conducta del demandado, a través de su inspector, y su arquitecto y su comisión de obras públicas, le impide ahora reclamar que no se cumplió con el contrato. Sus agentes autorizados estuvieron allí durante el progreso del trabajo, con el deber de velar por su propia y debida ejecución. La ciudad, a través de su comisión de obras públicas, actuaba semanalmente sobre los informes rendidos, y pagaba las cantidades adeudadas de acuerdo con los estimados. La ley no permitiría al demandado ver la continuación de este trabajo, ratificarlo día tras día, y semana por semana, ver al demandante poner piedra sin cumplir exactamente con el contrato, y decir entonces, a la terminación del trabajo, "usted no ha cumplido con el contrato." El término durante el cual debió haberlo aceptado o repudiado fué mientras se efectuaba el trabajo. No pudo inducir al demandante a creer que el trabajo era satisfactorio, y, una vez terminado, repudiarlo.' "

En la demanda no se alega fraude. Todo lo que en ella se dice después de especificar detalladamente cómo debía realizarse la construcción, según el contrato, es lo que sigue:

"X.—Que el demandado, Rafael Berríos, no cumplió con el contrato referido, ni con las condiciones exigidas en los planos y especificaciones para la obra ni con los mandatos de la técnica y la práctica ordinaria.

"XI.—Que en septiembre 13, 1928, al ser azotada esta isla por el ciclón de San Felipe, el edificio objeto de esta acción, como consecuencia de los defectos ocultos de construcción apuntados, quedó inservible y arruinado.

"XII.—Que con motivo de dicha viciosa e impropia construcción el demandante ha sufrido daños y perjuicios que estima en la suma de $8,150, que no ha sido satisfecha al demandante ni en todo ni en parte ni por los demandados ni ninguna otra persona para su uso y beneficio."

Si el contratista no cumplió, como la evidencia demuestra que en efecto no cumplió, construyendo la obra en la forma especificada en el contrato, lo hizo necesariamente con conocimiento y consentimiento del dueño a través de su agente.

En tal virtud, sin que se alegue y demuestre la existencia de fraude, habiendo el dueño aceptado la obra, como la evidencia demuestra que la aceptó, es claro que perdió su derecho a toda ulterior reclamación por defectos en la construcción de la misma.

La sentencia que declaró sin lugar su demanda debe en su consecuencia confirmarse.

¿Erró la corte al dictar dicha sentencia sin especial condenación de costas?

Sostienen los demandados apelantes que la ley aplicable es el artículo 327 del Código de Enjuiciamiento Civil tal como fué enmendado por la Ley núm. 69 de 1936, leyes de ese año, (1) pág. 353 y así es en efecto, ya que la sentencia de que se trata se dictó en 1937.

Y sostienen además que siendo dicha ley compulsoria y habiéndose demostrado la temeridad del demandante, la corte

de distrito estaba obligada a condenarlo al pago de las costas del pleito incluyendo los honorarios de abogado.

La ley es en efecto compulsoria en cuanto a las costas, pero los honorarios siguen dependiendo de la temeridad de la parte perdidosa apreciada discrecionalmente por el juez sentenciador.

Al declarar sin lugar la reconsideración la corte dijo:

"Consideradas todas las circunstancias que surgen de los autos y el carácter debatible de las cuestiones jurídicas que sirvieron de fundamento a la acción, se declara sin lugar la moción de reconsideración de sentencia presentada en este caso."

Y no se nos ha convencido de que estuviera errada en su criterio.

En tal virtud procede la modificación de la sentencia apelada agregándole el siguiente pronunciamiento: "con imposición de las costas a la parte demandante." Claro es que dichas costas no comprenden los honorarios de abogado. *McCormick v. González Martínez*, 52 D.P.R. 912.

*En su consecuencia y declarándose sin lugar el recurso del demandante y con lugar, en parte, el de los demandados, la sentencia apelada quedará de tal modo modificada y con la modificación confirmada.*

Los Jueces Asociados Sres. Travieso y De Jesús no intervinieron.