PERLES & STONE, INC., a Corporation, v. CHILDS COMPANY, a Corporation, Appellant.—84 S. W. (2d) 1052.

Division Two, July 11, 1935.

*Neun, D'Arcy & Neun* for appellant.

450

*Boyle & Priest, George T. Priest* and *Robert E. Moloney* for respondent.

COOLEY, C.—This is an action brought to recover the reasonable value of services alleged to have been rendered by Perles & Stone, a partnership, in procuring for defendant the leasing of certain real

estate. Upon trial to a jury there was a verdict for defendant. The circuit court sustained plaintiff's motion for new trial on two grounds therein assigned, viz., that the verdict was against the greater weight of the evidence and that the court had erred in admitting, over plaintiff's objections, "improper, immaterial, irrelevant and incompetent evidence" offered by defendant. Defendant appealed.

Defendant has a ninety-nine year lease on certain improved real estate on Olive Street in St. Louis. Plaintiff's petition alleges that about September, 1928, Marc Perles and Frank F. Stone, copartners engaged in the real estate business in St. Louis, procured for defendant the leasing of its said property to Rossman, Inc., a corporation, for a twenty-five year period; that the reasonable value of the services so rendered is $14,158.33; that Rossman, Inc., took possession of the premises as defendant's lessee and that defendant thus became indebted to Perles & Stone for the reasonable value of their services; that thereafter said partners caused to be formed the plaintiff corporation and assigned to it their claim against defendant and so notified the latter.

Defendant's amended answer, after alleging lack of knowledge sufficient to form a belief as to whether or not Perles & Stone, as partners, had been in the real estate business or had caused plaintiff corporation to be formed or had assigned to it their claim, alleged that if said Perles & Stone or plaintiff "have or ever had any interest in the commissions arising out of the services alleged in the petition to have been rendered on behalf of the defendant the interest of said copartners, Marc Perles and Frank F. Stone, and/or Perles & Stone, Inc., is and at all times was a joint interest with one E. Earl Siegel; that on or about the 13th day of May, 1930, defendant paid to said E. Earl Siegel the sum of $3000, which was paid to and received by said E. Earl Siegel in full satisfaction, compromise and payment of the whole claim of said E. Earl Siegel and of the claim of said copartners, Marc Perles and Frank F. Stone, and/or Perles & Stone, Inc., described in the petition. Defendant denies each and every other allegation stated in the petition." The reply was a general denial.

Plaintiff introduced evidence tending to prove the following:

Perles & Stone, partners, were licensed real estate dealers in St. Louis and had an arrangement with E. Earl Siegel, who was not a licensed dealer, whereby the latter acted as salesman for them, receiving from them portions of the commissions which they received on transactions in which he assisted or which he brought to the office. He was not a partner of Perles & Stone or either of the members of said firm. Childs Company, defendant, had headquarters in New York City. On December 16, 1927, Perles & Stone wrote Childs Company as follows:

452

"The Childs Co.,
"200 Fifth Ave.,
"New York.
"Gentlemen:
"We understand that you are desirous of giving up the lease of your Olive Street restaurant, namely, 614-16 Olive St.

"If so, we believe that we have a client who might be interested in this property.

"Trust that you will favor us with an early reply.
"Yours very truly,
"Perles & Stone."

Childs Company replied December 19, 1927:
"Messrs. Perles & Stone,
"Central National Bank Building,
"Seventh and Olive Streets,
"St. Louis, Missouri.

"Re: 614-616 Olive Street, St. Louis.
"Gentlemen:

"We have your letter of December 16th and suggest that, if you have anybody who is definitely interested in this property, you submit to us a proposition thereon, after which we shall be glad to answer any suggestion as to our giving up this space.
"Very truly yours,
"Childs Company.
"Frederick W. Bode
"Frederick W. Bode."

Thereafter at Perles & Stone's suggestion Siegel sent letters to several prospective tenants without result. On July 7, 1928, Perles & Stone wrote to A. B. Rossman, president of Rossman, Inc., asking if his company would be interested in coming to St. Louis. About September 10, 1928, Siegel went to New York with instructions from Perles & Stone to call on Rossman and Childs Company. About September 18th Eli Rossman, vice president of Rossman, Inc., in company with Siegel, came to Perles & Stone's office and negotiations were had looking to the leasing of defendant's property by Rossman, Inc. In due time terms were agreed upon satisfactory to Rossman, Inc., and which Perles & Stone thought Childs Company would accept. Perles & Stone had their attorney draw a lease and also a commission contract, the latter being for the commission to be paid by Childs Company to Perles & Stone. Those documents were given to Siegel to take to New York for Childs Company's approval and signature. Siegel went to New York and conferred with Theodore Pellens who represented and acted for Childs Company in the negotiations which followed and in completing the transaction. Terms were agreed upon and a lease was prepared, which was accepted by

Rossman, Inc. The form of lease which Perles & Stone had had prepared was not used, although the one executed embodied most of its terms. At about the same time a commission contract was executed whereby Childs Company agreed to pay *Siegel* a commission for procuring the leasing of the property to Rossman, Inc. The lease and commission contract were both dated October 17, 1928. Said commission contract was not introduced by plaintiff but was introduced in evidence by defendant. It reads:

"Messrs. Childs Company,

"200 Fifth Avenue,

"New York City.

"Gentlemen:

"In consideration that you will execute the sub-lease and short form sub-lease with Rossman, Inc., covering No. 614-616 Olive Street, St. Louis, Missouri, now before waiting to learn whether or not you can arrange to have the sub-tenant, E. R. Van Booven, out of the premises by January 31, 1929, and in consideration that you will now give him prompt notice to remove from the premises in accordance with the clause contained in your sub-lease with Mr. Van Booven, I hereby warrant that I am the only broker entitled to commission in connection with the proposed sub-lease between Rossman, Inc., and your company and that I shall not be entitled to any commission whatsoever unless and until Rossman, Inc. shall take actual possession of the said premises as lessee, and that if and when this event occurs I shall be paid $5000 as a first payment on account and that the balance of my commission shall be paid as follows: one-half of the remainder to be paid one year after the making of the first payment and the balance of the remainder to be paid two years after the making of the first payment, but such payments or either of them, shall only be paid to me in the event that Rossman, Inc. shall on the due dates of said payments be occupying the said premises as your lessee and shall be complying with and performing the terms, covenants and conditions of the sub-lease by Rossman, Inc. to be complied with and performed.

"I understand and agree that if you are unable to turn over the premises free of tenants by January 31, 1929, and Rossman, Inc. shall be unwilling to accept said premises unless entirely empty, then you have the option to declare the lease null and void and in this event no commission whatsoever is to be paid by you. The amount of the brokerage is $14,250; the balances unpaid shall bear interest at 5% per year.

"Yours very truly,

"E. E. Siegel.

"Accepted October 17, 1928.

"Childs Company

"By S. Willard Smith

"Vice President."

The evidence discloses without dispute that Siegel did not show to Pellens the commission contract which Perles & Stone had prepared and given to him. He returned to St. Louis and about November 2nd or 3rd showed Mr. Perles, of Perles & Stone, the commission contract he had made with Childs Company. Mr. Perles, on November 7th, called up Pellens and talked with him about it. Perles testified without objection that in that conversation Pellens admitted that he had known "all the time" that Siegel was representing Perles & Stone in the matter of procuring the lease from Childs Company to Rossman, Inc., and promised to wire Perles to that effect. On November 8th he telegraphed Perles & Stone as follows: "Had to leave town will investigate your matter Monday." On November 9, 1928, Perles, for Perles & Stone, wrote Pellens as follows:

"Dear Mr. Pellens:

"Your wire from Cleveland dated November 8th received.

"Confirming our long distance telephone conversation of Wednesday, November 7th. You stated you were informed by Mr. E. Earle Siegel that he was representing Perles and Stone, Realtors in the leasing of Childs' St. Louis location viz., 614 Olive Street to the Rossman Co., Clothiers, also doing business under the trade name of 'Clemons.'

"We have a copy of an agreement of commission by and between the Childs Company and E. Earle Siegel. Evidently this agreement was made by our representative and attorneys representing the Childs Company unbeknown to you, and therefore, it is also evident that Mr. Siegel failed to inform them of his connections with us.

"You will find enclosed a copy of agreement which we handed Mr. Siegel to present to the Childs Company and any deviation from this agreement was without our knowledge and consent.

"As your telegram stated you would investigate this matter Monday at which time we will expect to hear from you by wire.

"Yours truly,
"Marc Perles
"Perles & Stone."

The above letter was answered by Lane & Logan, attorneys for Childs Company. Their letter was offered in evidence by defendant but upon plaintiff's objection the court excluded it.

On December 19, 1928, Perles & Stone wrote Childs Company as follows:

"Gentlemen:

"We heretofore advised you in our letter to you of November 9, 1928, acknowledged by your attorneys Messrs. Lane & Logan, Wool-

worth Building, New York City, to the effect that Mr. E. Earle Siegel had no authority to make any contract with you for commissions in connection with the sublease by you of certain space at 614-616 Olive Street, St. Louis, Missouri, to Rossman, Inc. In that transaction Mr. Siegel was working for us and it was understood that any agreements as to commissions would be made between you and this firm and that Mr. Siegel would thereafter share in such proportionate part thereof as had been agreed upon between him and this firm.

"In the presence of Mr. Siegel and in the office of Salkey & Jones and at the request of Mr. Siegel and ourselves, Mr. Jones of that firm drew up a suggested form of contract to be entered into by ourselves and your company for the commissions to be paid us as real estate agents. This suggested form of contract was taken by Mr. Siegel to New York at our request and, as aforesaid, was made only in our name, Mr. Siegel's name not being mentioned in any way therein, and it was greatly to our surprise to be advised later that he had purported to make or did make a contract or an alleged contract with you for commissions in connection with this sublease of certain premises as aforesaid. He had no authority to do so and was simply representing us in this transaction and had authority only to make such contract with you as should be made in our name and as we might approve.

"We are advised that under this purported contract made by Mr. Siegel with you that there will be a first installment of commissions due and payable on January 16, 1929, in the sum of $5000, on January 16, 1930, the sum of $4625 and on January 16, 1931, the sum of $4625 with interest on deferred payments at 5% per year.

"We, therefore, make demand upon you that any commissions for services rendered by either Mr. Siegel or this office in connection with said sublease of said premises by yourselves, must be paid to our firm alone and not to Mr. E. Earle Siegel and that if you make payment to Mr. Siegel under said purported contract or pay any of the moneys enumerated above and stated to be set out in said purported contract, that we will hold you responsible and look to you for the payment of such commissions to us, and hereby renew our demand upon you that such commissions be paid to us and not to Mr. E. Earle Siegel.

"This letter goes to you by registered mail and we will appreciate it if you or your attorneys, Messrs. Lane & Logan, will acknowledge receipt hereof.

"Very truly yours,
"Marc Perles and Frank F. Stone,
doing business as Perles & Stone."

Defendant's evidence tended to prove that it had no knowledge at or prior to the time of executing the lease that Siegel was Perles & Stone's agent or that Perles & Stone had any connection with the transaction. Over plaintiff's objection defendant also introduced evidence tending to prove that about June, 1929, Siegel brought suit against it in New York to recover the full commission and that in May, 1930, it settled with Siegel, paying him $3000 and receiving from him a full release. At the time that settlement was made Rossman, Inc., was in default in the payment of rent and the performance of other conditions of the lease, and had been sued by Childs Company for the money due it. That suit was settled at the same time as Siegel's suit by written agreement between Childs Company and Rossman, Inc., in which, among other things, Rossman, Inc., confesses its inability to pay rent and otherwise comply with the terms of its lease and in which the lease is "declared forfeited."

Appellant makes in effect but one contention on this appeal, viz., that plaintiff did not make a submissible case and that the court should have directed a verdict in its favor. Several grounds are alleged but they are all advanced as reasons why the court should have sustained defendant's demurrer to the evidence. Respondent briefs no other point. We shall therefore treat the case from that standpoint.

Appellant first contends that its demurrer at the close of plaintiff's evidence should have been sustained because plaintiff did not introduce in evidence the contract for commission signed by defendant and Siegel, which, for convenience, we shall refer to as the commission contract. On this point it is sufficient to say that defendant did not stand upon its demurrer at the close of plaintiff's case in chief but went forward with evidence in its own behalf and itself introduced the contract. The sufficiency of the evidence to make a submissible case must be adjudged upon the evidence in plaintiff's favor as a whole, including any evidence that may have been introduced by defendant tending to aid plaintiff's case or to supply omissions in its evidence.

If, as plaintiff contends and its evidence tends to show, defendant knew during the negotiations for the lease and when it executed the commission contract, that Siegel was merely Perles & Stone's representative and was acting for them, it seems to us clear that it could not escape liability to Perles & Stone for services thus rendered to it by Perles & Stone and accepted by it, by making a contract to pay Siegel for those services, especially where, as is clearly shown in this case, it was apprised before making any payment to Siegel that his principals were claiming and demanding the commission. But appellant argues that Perles & Stone ratified the commission contract and can recover, if at all, only according to

that contract. If they did ratify the contract as to the amount of commission and terms of payment that fact alone would not preclude some recovery by plaintiff, hence would not have warranted the court in directing a verdict for defendant.

The suit is not specifically on the contract but for *quantum meruit*. In Williams v. Chicago, S. F. & Cal. Ry. Co., 112 Mo. 463, 20 S. W. 631, cited by appellant, the plaintiff had furnished materials and done work for the defendant under a written contract. One count of the petition sought recovery upon *quantum meruit*. The court said, 112 Mo. l. c. 491, 20 S. W. 631:

"At common law, a party could sue *in assumpsit* to recover the stipulated price due on special contract where the contract had been fully executed, and nothing remained to be done but the payment of the agreed price. [Mansur v. Botts, 80 Mo. 651; Chesapeake & O. Canal Co. v. Knapp, 9 Peters, 565; Dermott v. Jones, 2 Wall. 9.] In such a case he does not repudiate the contract, nor seek to avoid it, but, under his common count of *quantum meruit*, he offers the contract in evidence to sustain his case, and his proof of compliance with its terms."

In the instant case the services had been fully performed. The lease had been negotiated and the lessee had entered into possession of the premises thereunder. Nothing remained to be done, as between the parties to the commission contract, except to make payment for the services which had been rendered. Plaintiff is not barred of recovery by reason of having sued for the reasonable value of the services rather than upon the contract. We do not understand appellant to dispute the principle announced in Williams v. Ry. Co., supra, and shall not elaborate upon it. Appellant cites that case in support of its contention that the court should have sustained its demurrer at the close of plaintiff's evidence, because plaintiff's witness, Perles, on cross-examination, had identified the contract and admitted its execution. That particular contention fails because, as stated above, defendant did not stand upon said demurrer and itself introduced the contract.

But as we understand appellant's contention it goes farther than merely that the contract limits the amount of plaintiff's recovery. The further contentions are advanced that: (a) ratification of part of an agent's unauthorized act is a ratification of the whole; (b) ratification by the principal relates back to the time when the contract was made, "and therefore Siegel's agency for Perles & Stone became as effective, when the latter brought this suit, as though he had acted under the express authority of Perles & Stone in signing the commission contract with Childs;" and (c) that ratification once made is irrevocable.

The authorities cited and others sustain, generally speaking, the

above propositions. But we cannot approve the application thereof which appellant apparently attempts to make, viz., that ratification of the commission contract made by Siegel in his own name includes ratification of the provision thereof for payment *to him*. In Weber v. Collins, 139 Mo. 501, 41 S. W. 249, the plaintiffs contracted with one Clara S. Collins to furnish materials and build a house. They sued for a balance due and to establish and enforce a mechanic's lien. A general judgment went against said Clara S. Collins and her husband, a codefendant. The court said, 139 Mo. l. c. 507, 41 S. W. 249, 251:

"Defendant complains chiefly of the finding of the referee that Monroe R. Collins is personally liable for the balance found to be due upon the building contract, and to the general judgment of the court against him. There is no dispute that the contract was signed by Clara S. Collins alone, but the referee finds, as a fact, that her husband, Monroe R. Collins, was the real party interested, and his wife was merely acting as agent for him when she entered into the agreement with plaintiffs. If his finding of fact is correct, the conclusion of law therefrom is also correct, for the law is well settled that a principal may be charged with liability, on a contract made in his behalf, though his interest be not disclosed or known at the time to the other contracting party. The following observations of Baron Parke have been twice, at least, quoted with approval by judges of this court: 'There is no doubt,' he says, 'that where such an agreement is made, it is competent to show that one or both of the contracting parties were agents for other persons, and acted as such agents in making the contract, so as to give the benefit of the contract on the one hand to, and charge with liability on the other, the unnamed principals; and this, whether the agreement be or be not required to be in writing by the Statute of Frauds; and this evidence in no way contradicts the written agreement. It does not deny that it is binding on those whom, on the face of it, it purports to bind; but shows that it also binds another, by reason that the act of the agent, in signing the agreement in pursuance of his authority, is in law the act of the principal.' "

In the instant case there was not only evidence that Siegel, in producing Rossman, Inc., as lessee and in negotiating the lease to that company, was acting as agent or representative of Perles & Stone, but also evidence tending to prove that defendant so knew. Moreover, shortly after the transaction was consummated and before defendant had made any payment to Siegel it was fully apprised by Perles & Stone of their claims. Under those circumstances we think there can be no doubt that plaintiff, as Perles & Stone's assignee, can maintain an action to recover for the services rendered. The assignment to plaintiff of Perles & Stone's claim was proved.

Appellant makes the further contention,—somewhat inconsistent it would seem, with the theory of its contentions respecting ratification and with its pleading as well,—that plaintiff cannot maintain the action because Perles & Stone are not named in the commission contract and the contract shows on its face that defendant was dealing with Siegel alone and individually and not with him as an agent. By its pleading and an instruction given at its request appellant proceeded below on the theory that Siegel had made with it a contract for himself and Perles & Stone jointly, such that he had a right to bind Perles & Stone by his settlement. Plaintiff's evidence tends to prove that such was not the contract. Moreover, if, as plaintiff's evidence tends to prove, defendant knew that Siegel was acting for Perles & Stone and with such knowledge dealt with him in that capacity it knew it was in effect dealing with Perles & Stone and accepting their services. In such case we think it clear that it could not avoid liability to them by agreeing to pay Siegel. We think plaintiff made a submissible case.

The foregoing disposes of the only question urged on this appeal. But in view of another trial and to the end that the litigation may not be unnecessarily prolonged we deem it best to express our views on the question of ratification.

According to plaintiff's theory Perles & Stone sent their agent to New York to negotiate for defendant a long term lease. They had had no previous communications with defendant respecting the terms and conditions to be embodied therein nor as to the commission to be paid. They provided their agent with a form of commission contract calling for a certain commission to be paid to them but said agent did not show that to defendant nor, so far as shown, disclose to it that he had any instructions from his principals concerning the commission expected. In that situation Siegel negotiated a lease and agreed with defendant upon the amount and terms of payment of the commission. The lease contained provisions for forfeiture if the lessee should fail to perform its conditions, as it might well have been expected to provide. Siegel returned to St. Louis, informed Perles & Stone of what he had done and showed them the commission contract or a copy thereof. Appellant contends that by bringing this suit, with full knowledge of the facts, plaintiff ratified the commission contract and is bound by its terms. We need not determine whether or not the bringing of the suit alone would amount to ratification of that contract as to amount and terms of payment. In our opinion Perles & Stone did so ratify it by their letter to defendant of December 19, 1928, which we have set out above. In their letter to Pellens of November 9, 1928, they said that any deviation by Siegel from the proposed contract they had given him had been without their knowledge and consent, but they did not

say they repudiated the contract Siegel had made. In their letter of December 19th they referred to the commission contract, the amounts to be paid and the times of payment as therein specified, and demanded that *such commissions* be paid to them and not to Siegel. At that time they had full knowledge of all the facts. We find nothing in the record indicating that thereafter and before bringing this suit they withdrew that demand or demanded payment otherwise than as specified in the commission contract, nor is there anything in the record to give that letter a meaning other than its language plainly expresses. "In its genuine sense, ratification depends on intention. It is the voluntary assumption, on full information, of an unauthorized act or agreement by the party in whose behalf it was done or made. The intention to ratify may be manifested by express words or by conduct. Either may establish that the principal elected to adopt the act or agreement as his own; and the election once made with knowledge of the facts, becomes irrevocable." [St. Louis Gunning Adv. Co. v. Wanamaker & Brown, 115 Mo. App. 270, 280, 90 S. W. 737.] See, also, Plummer v. Knight, 156 Mo. App. 321, 343, 137 S. W. 1019, holding that, "The ratification, when once made, becomes irrevocable, and cannot afterwards be repudiated by the principal even though the approval was for only a short time, nor can the principal thereafter pursue a remedy or offer a defense inconsistent with the ratification or based upon a subsequent repudiation of the agent's acts."

The question of ratification may be and often is one of fact, to be determined by the triers of the facts. Here we have a letter offered by plaintiff, admittedly written by Perles & Stone, from whom plaintiff derives its claim. It is uncontradicted and unexplained and speaks for itself. We think it indisputably speaks the intent to claim the commission agreed upon by defendant and Siegel, as specified in the commission contract.

The order of the circuit court awarding a new trial is affirmed and the cause is remanded. *Westhues* and *Bohling, CC.,* concur.

PER CURIAM:—The foregoing opinion by COOLEY, C., is adopted as the opinion of the court. All the judges concur.