Hazel WILKS, Plaintiff-Respondent,

v.

BIII STONE, d/b/a Barnes-Stone Chevrolet
Company, Defendant-Appellant.

No. 7855.

Springfield Court of Appeals.

Missouri.

Oct. 20, 1960.

Almon H. Maus, Monett, for defendant-appellant.

Edward V. Sweeney, Monett, for plaintiff-respondent.

RUARK, Judge.

Replevin: Plaintiff, who is now respondent, filed her petition on *May 5, 1959*. She alleged that on *May 4, 1959* she was the owner and entitled to possession of a 1957 Plymouth. On the ——— *day of April, 1959*, defendant wrongfully and without plaintiff's consent acquired possession, and still retains possession, of the automobile. On *May 4*, plaintiff demanded possession, which was refused. For answer defendant, now appellant, admitted possession and further pleaded that on *April 13* one Larry Wilks (son of plaintiff), with approval of the plaintiff, contracted for the purchase of a 1959 Chevrolet. In pursuance of this agreement the 1957 Plymouth was delivered to the defendant as a trade-in, and it was agreed that title of the Plymouth would be assigned to the defendant. The plaintiff ratified and adopted said transaction. Thereafter Larry Wilks, as agent for and with the approval of the plaintiff, disposed of the 1959 Chevrolet. For further answer defendant charged that at the time of the "aforesaid transaction and agreement" it was agreed defendant would make certain repairs to the Plymouth and that in pursuance of such agreement defendant made said repairs to the reasonable value of $227.80. The cost of said repairs has not been paid.

The evidence offered *and admitted* is as follows:

Plaintiff testified that on *May 4* she was the owner of the 1957 Plymouth, this over objection of the defendant. She then introduced a certificate of title, dated *May 20, 1959*, showing her ownership as of that date. She said she received the certificate "sometime in May"; that on April 13, 1959, she did not actually have the title to the 1957 Plymouth, "not that one." The Plymouth was purchased on February 27, 1959, and was worth approximately $2,000 on May 4, 1959. (It was stipulated that $1,295 was paid for the car when it was purchased.) Defendant took possession of the Plymouth on April 13, 1959, but this was not with plaintiff's consent, and prior to filing suit she personally made demand (and physical effort) to retake possession of the Plymouth and was refused.

On cross-examination she testified that her son, Larry Wilks, was eighteen years of age "on the 5th of July" and that Larry was living in her home on April 13. She took possession of the Plymouth on February 27, 1959. It was in her possession until April 13, 1959, although her son Larry was driving it on that day. Larry drove this car to defendant's place of business, turned the car over to the defendant, and returned home with the 1959 Chevrolet convertible. She knew he had traded in the Plymouth on the Chevrolet convertible. She did not at that time contact the defendant or any of his employees, and one Al Higgins (salesman for the defendant) did not subsequently come to her home and discuss the transaction with her. She did "not then" learn that her son Larry had given a "no fund" check on the trade. She did not attempt to finance the 1959 Chevrolet (the car so traded for) at any bank or finance agency, but her son Larry did go to Joplin to obtain financing for it. She did not receive any of the proceeds from the later sale of the 1959 Chevrolet to another dealer. With that plaintiff rested.

Evidence for defendant offered and admitted was as follows:

Albert Higgins, a salesman for defendant, testified that he sold the 1957 Plymouth to Larry. The sale price was $1,295, and Larry paid for it (this last was stricken). Larry returned the Plymouth to defendant as a down payment for a new 1959 convertible. (Objection to this statement made after answer was sustained, but the answer was not stricken.) When the Plymouth was brought back in and turned over to defendant it was in need of certain repairs. It was understood defendant was to make these repairs, and repairs were made to the extent of $227.

The witness testified that subsequent to the trade he went to the home of plaintiff

and discussed the transaction (the purchase of the 1959 Chevrolet and the trade-in of the Plymouth) with plaintiff, but objection as to the conversation was sustained.

Don Crossland, an automobile dealer in Monett, testified that he had a discussion with Larry Wilks, and thereafter with the plaintiff, Mrs. Wilks, about buying the 1959 Chevrolet. Objection, after answer, was sustained, although the answer was not stricken, and by agreement the defendant made offer of proof hereinafter mentioned.

The defendant, W. T. Stone, testified that the 1957 Plymouth was worth $1,000 when it was traded back in.

That is substantially all the evidence defendant was permitted to introduce.

The defendant attempted to prove, by numerous separate questions to witnesses (to which objections were sustained) and by numerous separate and several offers of proof which were refused, the following facts:

The purchase of the 1957 Plymouth was negotiated by Larry Wilks, plaintiff's son. It was paid for by Larry and delivered to Larry. The physical possession and control of the car remained in Larry.

This purchase was made and done with the approval and written consent of the plaintiff (offer of the exhibit showing such written approval was refused).

On April 13, 1959, (the date of the trade for the 1959 Chevrolet) the Plymouth was in the actual possession and control of Larry.

At some time (the date is not shown) the car was, at request of Larry, actually "titled" in the name of plaintiff.[1]

Larry acquired the 1959 Chevrolet with "consent and approval" of the plaintiff. He turned in the 1957 Plymouth on the 1959 Chevrolet as a trade-in or part payment, and plaintiff knew he had made such trade. Larry agreed at that time that the title to the Plymouth would be transferred to the defendant.

Larry told the defendant that he had plaintiff's agreement and authority to make the trade and exchange, and they did so trade.

Larry gave a check for $1,965, representing the balance of the purchase price or difference in trade between the two cars. Payment on this check was refused as "no account."

Albert Higgins, employee and representative of the defendant, talked with plaintiff about the trade, the terms of the trade, and the check, and plaintiff stated to him that she knew of the exchange and that "the matter would be straightened out and consummated."

Larry went to Joplin with the approval, consent, and authority of the plaintiff in order to obtain financing on the 1959 Chevrolet (presumably this was after the trade was made and the check for difference in purchase price had been turned down).

On or about April 20, 1959, Larry sold the 1959 Chevrolet (so received in trade) to Don Crossland, an automobile dealer in Monett, and the plaintiff consented to and approved of that disposition of such automobile.

Larry was paid $2,200 in the transaction whereby he sold the 1959 Chevrolet to Crossland.

On the occasion of that sale and prior to consummation thereof, Don Crossland, the

1. We surmise but do not know for certain that the agreement for "titling" was at the time of the trade; but since defendant was not permitted to go forward with his proof in this respect the matter of date is somewhat in the dark. We find no evidence which clearly and unequiv-ocally establishes that plaintiff had actual title to the Plymouth prior to April 13. Plaintiff testified that she "purchased" the car on February 27. Testimony offered on behalf of defendant (refused by the court) was that Larry "purchased" it.

purchaser, discussed the transaction with plaintiff and she said "it was all right with her for the transaction to be consummated."

■ Appellant's first contention is that plaintiff did not show ownership and right to possession at the time suit was filed. We agree that the plaintiff in a replevin must show right to immediate possession at the time he files suit,[2] and that a plaintiff without a properly assigned title cannot, ordinarily, maintain replevin for an automobile.[3] But the title to a previously owned automobile passes by assignment and delivery of the certificate. The new certificate to be acquired by the buyer is only *evidence* of title.[4] We think the possession of a certificate of title dated May 20 would be some evidence of the fact that the holder had an assigned certificate sometime prior to the time of issuance of the new certificate (otherwise the new certificate could not have been issued), but we are unable to relate it to any specific date. As to the state of title at the time the alleged trade of automobiles was made, the evidence is not entirely satisfactory as to just who took assignment of title, if it was then assigned, on February 27 and who held the assigned title on *April 13* when the trade in question was made; but in view of the fact that the case is to be reversed and remanded for reasons hereinafter assigned and the parties can, if they so choose, make this clear on retrial, we pass this question without ruling as to this point. Certainly the plaintiff held title at *some* time prior to May 20, and for purposes of further discussion we will assume (as is probably the case, although doubtfully established) that plaintiff held title to the Plymouth on April 13 when the trade was made. · The first question is whether the defendant had right to retain possession under an agreement (assuming there to have been such contract) with the owner for the purchase or taking in exchange and concurrent delivery of possession of such automobile.

■■ It is our opinion that even though the legal title to the 1957 Plymouth had not been assigned to the defendant, if the defendant took and held possession of the automobile under a contract with the plaintiff for exchange and with promise of delivery of title, he had a "special property interest" in the automobile.[5] And this was sufficient to defeat the replevin unless and until repudiation or rescission was made effective by the return or offer to return the 1959 Chevrolet automobile so received in exchange. As a condition of repudiation or rescission the one who repudiates or rescinds is bound, except in certain extraordinary circumstances not here involved, to return the articles which he received in the transaction.[6]

The principal issue and dispute is whether respondent Wilks was bound to the contract of exchange because she ratified the acts of her son Larry, who purported to act as her agent (if such be proved) in making the purchase of the 1959 Chevrolet and in trading the 1957 Plymouth in as a part of the purchase price.

2. 46 Am.Jur., Replevin, sec. 113, p. 62; Cindrick v. Scott, 226 Mo.App. 153, 42 S.W.2d 957; Blake v. Keiser, Mo.App., 267 S.W. 94.

3. Hannibal Inv. Co. v. Schmidt, Mo.App., 113 S.W.2d 1048.

4. Sec. 301.210 RSMo 1949, V.A.M.S., Crawford v. General Exchange Insurance Corp., Mo.App., 119 S.W.2d 458; see Smith v. G. F. C. Corp., Mo.App., 255 S.W.2d 69, 71.

5. Peper v. American Exchange National Bank in St. Louis, 357 Mo. 652, 210 S.W. 2d 41; Pearl v. Interstate Securities Co., 357 Mo. 160, 206 S.W.2d 975; Rankin v. Wyatt, 335 Mo. 628, 73 S.W.2d 764, 94 A.L.R. 941; Hadley v. Smith, Mo.App., 268 S.W.2d 444.

6. Ilgenfritz v. Mo. Pac. Ry. Co., 169 Mo. App. 652, 155 S.W. 854; Schroeder v. Zykan, Mo.App., 255 S.W.2d 105; Cantrell v. Sheppard, Mo.App., 247 S.W.2d 872; Winona Wagon Co. v. Feaster, 188 Mo. App. 307, 175 S.W. 109; see Kesinger v. Burtrum, Mo.App., 295 S.W.2d 605, 609; Hymer v. Dude Hinton Pontiac, Inc., Mo.App., 332 S.W.2d 467; see note 15 *post*.

As relates to agency, "ratification" is an express or implied adoption or confirmation, with knowledge of all material matters, by one person of an act performed in his behalf by another who at that time assumed to act as his agent but lacked authority to do so. Ratification relates back and is the equivalent of authority at the commencement of the act. It is the affirmance of a contract already made.[7] The existence of agency and the authority of the agent can be and often is implied by proof of facts, circumstances, words, acts, and conduct of the party to be charged.[8] As applied to the agency or authority which is created or related back by means of ratification, it may be implied by any facts and circumstances from which it can be reasonably inferred that the party to be charged (with knowledge of the facts) acquiesced in and accepted the transaction as his own, or which are inconsistent with any other intention.[9] The intent to ratify may be implied from the circumstances, and this implication may be made even though the person to be charged as principal may have had an intention *not* to ratify.[10]

As to what facts, circumstances, and conduct will justify the inference of agency, no fixed rule can be stated. There is no particular mode by which it must be established. It depends upon the situation in each individual case.[11] One of the circumstances to be considered is the relationship of the parties. Although the bare relationship of parent and child is not, in and of itself, sufficient to justify the inference, such relationship is a factor of "considerable weight" to be considered along with all other circumstances as tending to establish the fact.[12] The prior conduct of the parties is also a factor to be taken into account if such conduct is a part of the "chain of circumstances" surrounding the transaction.[13] Under some conditions the mere silence and inaction of the party to be charged, a failure to dissent or speak up when ordinary human conduct and fair play would normally call for some negative assertion within a reasonable time, tends to justify the inference that the principal acquiesced in the course of events and accepted the contract as his own.[14]

Probably the most certain evidence of implied ratification is the acceptance and

7. Restatement of the Law of Agency 2d, sec. 82; Mechem on Agency, 2nd ed., sec. 350; Fritsch v. National City Bank of St. Louis, Mo.App., 24 S.W.2d 1066; Madison v. Williams, Mo.App., 16 S.W.2d 626, 629; see Rider v. Julian, 365 Mo. 313, 282 S.W.2d 484, 497.

8. Noren v. American School of Osteopathy, 223 Mo.App. 278, 2 S.W.2d 215, 220; E. C. Robinson Lumber Company v. Lowrey, Mo.App., 276 S.W.2d 636, 642; Thimmig v. General Talking Pictures Corp., Mo.App., 85 S.W.2d 208, 211; Bommer v. Stedelin, Mo.App., 237 S.W.2d 225, 229; State ex rel. Massman v. Bland, 355 Mo. 17, 194 S.W.2d 42, 46; State ex rel. Smith v. Bland, 353 Mo. 1073, 86 S.W.2d 443.

9. 15 Mo.Law Review 179, et seq.; 2 C.J.S. Agency § 23f, p. 1049; 3 C.J.S. Agency § 328(5), p. 315; see Platt v. Francis, 247 Mo. 296, 152 S.W. 332.

10. Mechem on Agency, 2nd ed., sec. 394; St. Louis Gunning Advertising Co. v.

Wanamaker & Brown, 115 Mo.App. 270, 90 S.W. 737, 739.

11. Wallo v. Rosenberg, Mo.App., 331 S.W. 2d 8, 13; see note 8 *supra*.

12. 2 C.J.S. Agency § 23c, p. 1048; Dinger v. Burnham, 360 Mo. 465, 228 S.W.2d 696(1).

13. Bennett v. Potashnick, 214 Mo.App. 507, 257 S.W. 836; Lawton-Byrne-Bruner Ins. Agency Co. v. Stiers Bros. Const. Co., Mo.App., 186 S.W.2d 480, 485; Buffalo Trust Co. v. Producers' Exchange, 224 Mo.App. 199, 23 S.W.2d 644, 648.

14. 2 Am.Jur., Agency, sec. 232, p. 186; Mechem on Agency, 2nd ed., secs. 457, 462; Restatement of the Law of Agency 2d, sec. 94, et seq.; 3 C.J.S. Agency, § 328(5), p. 315; St. Louis Gunning Advertising Co. v. Wanamaker & Brown, 115 Mo.App. 270, 90 S.W. 737; Compton v. Vaughan, Mo., 222 S.W.2d 81, 83; Ireland v. Shukert, 238 Mo.App. 78, 177

retention of the fruits of the contract with full knowledge of the material facts of the transaction.[15] Although this ratification by acceptance of the fruits does not necessarily apply where the benefits went to the assumed agent or some third party, nevertheless we think the party to be charged as principal should not be permitted to escape if she, with full knowledge of the facts, knowingly channels the benefits into the hands of another, or assists, aids, and abets the benefited party in making away with the fruits of the transaction so that the *status quo* cannot be restored. Such conduct is inconsistent with a good faith claim of no authority at the outset.

■ Since ratification may be established by facts and circumstances, it is sufficient to make a question for the trier of the fact if the whole sum total of the facts and circumstances justifies *the reasonable inference* that the party charged as principal accepted the transaction as his own. It is not necessary that each separate act, fact or circumstance stand on its own as proof sufficient to justify the inference. Each separate fact, act or circumstance is admissible if it *tends to establish* the agency, even though only remotely relevant.[16] Consequently a wide latitude is permitted in the introduction of evidence as to the circumstances, and objections to the reception of such evidence are not viewed with favor.[17] If there is any dispute as to the facts, or if different inferences can reasonably be drawn, ratification is a question of fact to be determined by the trier of the fact and not by the court.[18]

■ In this case the defendant offered and attempted to prove (a) the son Larry acquired the 1959 Chevrolet with consent and approval of his mother, the plaintiff; (b) plaintiff knew her son had traded in the 1957 Plymouth on another car which he brought home and she did not object or express dissent at that time; (c) after the purported trade had been made but the balance of the purchase price had not been paid (because of a no funds check) she stated to the defendant that "the matter would be consummated"; (d) she consented and "authorized" her son to go to Joplin to obtain financing so that the balance of the purchase price could be paid; (e) she affirmatively consented to and approved of her minor son's sale of the 1959 Chevrolet received in the transaction to another dealer, for which sale the son received $2,200 in cash. By such conduct it could be found that she assisted in and made possible a transaction whereby the fruit of the transaction was appropriated and the return of the parties to *status quo* was made impossible.

S.W.2d 10, 14; see Ilgenfritz v. Mo. Pac. Ry. Co., 169 Mo.App. 652, 155 S.W. 854.

15. Restatement of the Law of Agency 2d, secs. 98, 99; 2 Am.Jur., Agency, sec. 227, p. 181; Mechem on Agency, 2nd ed., sec. 434, et seq.; Newco Land Company v. Martin, 358 Mo. 99, 213 S.W.2d 504; Platt v. Francis, 247 Mo. 296, 152 S.W. 332, 336; Walker v. Hassler, Mo. App., 240 S.W. 257; St. Louis Mutual Life Ins. Co. v. Walter, 329 Mo. 715, 46 S.W.2d 166, 171; State, on inf. of McKittrick v. Koon, 356 Mo. 284, 201 S.W. 2d 446, 456; see State ex rel. Mutual Life Insurance Co. of Baltimore v. Shain, 339 Mo. 621, 98 S.W.2d 690, 692; Cannon v. Blake, 353 Mo. 294, 182 S.W.2d 303.

16. 3 C.J.S. Agency, § 322, p. 273, § 328 (b), pp. 301, 302, et seq.; John P. Mills Organization v. Bell, 225 Mo.App. 685, 37 S.W.2d 680, 683; see Bennett v. Potashnick, 214 Mo.App. 507, 257 S.W. 836; Look v. French, 346 Mo. 972, 144 S.W. 2d 128(2); Mosby v. McKee, Zook & Whiteford Commission Co., 91 Mo.App. 500, 506.

17. Smith v. St. Louis Public Service Co., Mo.App., 84 S.W.2d 161; Herrman v. Daffin, Mo.App., 302 S.W.2d 313; Luechtefeld v. Marglous, Mo.App., 151 S.W.2d 710.

18. 67 C.J.S. Parent and Child § 62f, p. 793; Mechem on Agency, 2nd ed., sec. 481; Badger Lumber & Coal Co. v. Pugsley, 227 Mo.App. 1203, 61 S.W.2d 425(12); Perles & Stone v. Childs Co., 337 Mo. 448, 84 S.W.2d 1052, 1058; Waco Elevator & Grain Co. v. Baldwin, Mo.App., 21 S.W.2d 193.

We think these facts and circumstances, some of which were denied by the plaintiff, had they been permitted in evidence, would have permitted a finding by the trier of the fact that Mrs. Wilks ratified the sale or exchange of her automobile, and that consequently the trial court was in error in excluding such evidence. We believe that, under the situation here involved, justice to all parties requires that the whole circumstances of the transaction be revealed. For such reason the judgment is reversed and the case is remanded for retrial.

STONE, P. J., and McDOWELL, J., concur.